COMMONWEALTH *vs.* ELLEN L. SMITH.

Bristol. October 26, 1875. — January 4, 1876. MORTON, J., absent.

At the trial of an indictment for burning a dwelling house there was evidence tending to show that the house was set on fire by some one, and there were facts and circumstances pointing to the defendant, a girl fourteen years old, as the probable incendiary. The government was permitted to introduce evidence that after her arrest, and while in custody, the defendant confessed to officers, when questioned by them, that she set the fire, and stated how she did it, but it did not appear that any threats or promises were made by the officers. The jury were instructed that they should give no weight to the confession if it was induced by threats or promises; but if it was not so induced, that such weight should be given to it as they thought it entitled to; that threats and inducements might be by acts as well as words; and that mere fear on the part of the defendant did not render the confession incompetent unless induced by some improper conduct on the part of the officers. *Held,* that the evidence was rightly admitted. *Held,* also, that the instructions were correct. *Held,* also, that the confession, being supported by independent evidence, would warrant a conviction.

INDICTMENT for burning the dwelling house of Giles F. Allen, at Dartmouth, on June 28, 1874. At the trial in the Superior Court, before *Pitman,* J., there was evidence tending to show the following facts:

On the night of June 28, 1874, said Allen and his wife went to bed at about nine o'clock. The rest of the family, consisting of a young son of twelve, his sister-in-law, and two small children, and also his hired man, Head, and the defendant, a colored servant girl, between fourteen and fifteen years of age, employed for her food and clothing, had all previously retired to bed between eight and nine o'clock. Mr. and Mrs. Allen slept on the first floor of the house in a bedroom leading from the dining room, and the rest above. At about quarter past ten o'clock, Mrs. Allen was awakened by the smell of smoke. She aroused her husband who was asleep, went to the cellar door, opened it, and discovered a blaze in the basement. Her husband hurried down, and found that some shingles, which had been placed in a partitioned room adjoining a washroom, were on fire; he extinguished the fire with a few buckets of water standing near, which had been drawn by himself and hired man the night before. Mrs. Allen aroused the family, and when Head got down there the fire was extinguished, only some portions of the door and casements of the building

being slightly burned. The outside cellar door that led out doors from the washroom could be unbarred from the outside, by a person acquainted, by the removal of a stone between the mason work and the door frame. It' had been fastened that night, but was then unbarred, so that it could be opened, the bar being dropped down on the floor at the bottom. It could not be opened and closed without a creaking noise by rubbing on the threshold. The sister-in-law and the children slept in the second story over the first floor, and Head and the defendant slept in the second story of the ell, her room being beyond his, and she usually passed through his room on going to or from her room. Upon the alarm being given she passed through his room in her night clothes before he had got out of bed, and at the request of Mrs. Allen, lighted some lamps, and then went with Mr. Allen's son to call in some neighbors. The family soon after retired.

The next morning, Mrs. Allen discovered a half-pint bottle about half full of kerosene, standing at the end of a wood box in the kitchen. She testified that it was not there the night before and she had never seen the bottle before, and that, though she had used a half-pint bottle to pour kerosene on her hens frequently, this was not the one she used. She showed it to her sister and husband, and to the defendant that morning, and inquired if they knew how it came there, and they all answered in the negative. They kept kerosene in a two gallon can, and another smaller can kept on a shelf under the sink in the kitchen. They used kerosene for light. That morning Mr. Allen discovered a considerable amount of kerosene on the shingles beneath where the fire occurred, which had not burned. He showed these shingles and the bottle of kerosene to officers Dayton and Dunham, of New Bedford, who came there on July 7, following. Mr. Allen had previously offered a reward of $200 for the detection of the incendiary. Dayton and Dunham caused the kerosene found in the bottle and also that kept in the cans in the house to be tested by an inspector or assayer who pronounced them the same in quality.

On July 10, the defendant, at about four o'clock in the morning, before the family was up, left Mr. Allen's, without his knowledge, and walked to New Bedford, a distance of about eleven miles, and to the house of G. W. Offley, a friend of her parents,

and whom she had before frequently visited. Mr. Allen called there for her during the forenoon, and had some conversation about her return and her clothing that she had left, she telling him that she did not wish to return. She afterwards testified that the reason of her leaving as she did was that she was afraid they would not let her go, and that she wanted to live in the city and wanted wages.

In the forenoon of July 14, she remaining at Offley's, Dayton, a police officer of New Bedford, and Dunham, a state constable, called at Offley's house, not having a warrant, and found the defendant shelling peas. Dayton said to her, "Ellen, I want you." She got up, went up stairs followed by Dayton, got her bonnet, and came down. Mrs. Offley was then there and inquired what was up. Dayton replied, "We want her to go down town." Mrs. Offley then said, "Tell the whole truth." They went with her in a carriage to the police station of New Bedford, a distance of about a mile and a half, and as she was going into a cell under the charge of Dunham, and had just got inside when Dayton said to Dunham, "Hold up, let us talk here." They then sat down near the cell door, and Dayton asked her why she left Allen's, and she said she was tired and wanted to live in the city. Dayton then said, "Ellen, I suspect you of setting the fire," and asked her if she did. The defendant objected to evidence of what she said at that time in the nature of a confession, on the ground that what she said was under intimidation in the nature of threats or promises, though there was no evidence of verbal threats or promises. The judge overruled the objection, and the evidence was admitted. Dayton and Dunham then testified, substantially, that in answer to their questions while sitting there, and no other person present, she said that on Sunday afternoon, (the day of the fire,) when filling the lamps, she went down cellar where there were bottles, took a bottle from there, filled it with kerosene from the can, and set it on the shelf in the kitchen, and at night, when she thought they were all asleep, she came out through Head's room, down stairs, took the bottle, and went through the dining room into the front entry and down the cellar stairs leading from there, and she poured some of the kerosene on the shingles, put a match to them, then took the bar from the outside cellar door, and laid it so it would look as if some one from outside had un-

fastened it; that she did not open the door, as it would creak on the bottom; that she then came up stairs, and as she passed through the kitchen she set the bottle, being about half full, at the end of the wood box, where Mrs. Allen found it the next morning, and then passed up stairs to her own room, and had just got into bed when she heard Mrs. Allen give the alarm, and she came down, as has been stated. She was then shown the bottle by Dunham, and said she knew that it was the bottle by the dirt that was in the bottom. She was asked if she knew them (Dayton and Dunham) when they were at Allen's on July 7. She replied that she did, and if they had then asked her she would have told them the same; that she was sorry as soon as she did it.

She was then put into the cell, and shortly afterwards, within a few minutes, one Hammond, an officer, saw her in the cell crying, and asked her what she was in there for, and she replied, "For setting a fire."

Mrs. Allen testified that her bedroom adjoined the dining room, that her door that led into it was open, but the doors that led into the kitchen and front entry through which Ellen passed were both closed when she arose, and the cellar door leading from the front entry which was also fastened.

The defendant testified that the officers promised her that, if she would say she set the fire, they would clear her, and she would not be prosecuted, and that thereupon she told them she did set it on fire, but that she told none of the particulars in regard to the kerosene and manner of doing it, as detailed by them; that her confession was untrue; that she had nothing to do with setting the building on fire; that she told the story to effect her release from jail; that she pleaded not guilty to the complaint the next morning, and had been persistent in her denial of the charge ever since.

Both officers being recalled denied using the language attributed to them by the defendant, or any threats or promises. This was all the material evidence in the case. The defendant then asked that the evidence of the confession be excluded as improperly obtained. This was refused. The defendant then requested the judge to instruct the jury as follows:

"1. That if they were satisfied that the confession was made under fear or under menace, though not of words, they should reject it.

"2. That a naked confession uncorroborated by circumstances is not sufficient to justify a conviction; that proof that the arson was committed by some one is not in itself standing alone a corroboration of the confession.

"3. That the whole evidence as it stood would not justify a conviction."

The judge declined to give these instructions, and upon these points instructed the jury as follows:

"1. If upon the whole evidence in the case it appears to you that the alleged confessions were not induced by any threats or promises, they may be considered by you and allowed such weight as you consider them entitled to; but if these statements appear to you to have been induced by threats or promises, the statements should not be allowed any weight or effect against the defendant.

"2. Threats and inducements may be by acts or conduct as well as by words. But mere fear on the part of the prisoner, unless induced by some improper conduct on the part of the officers, would not render the confession incompetent. So the fact that the confession was made while the party was under arrest, or in a cell, or after the prisoner had been placed therein and then taken out, would not of itself render the confession inadmissible.

"3. A free and voluntary confession by a person accused of an offence, whether made before or after the arrest, if satisfactorily proved, and there is independent evidence that the crime has been committed by some one, is sufficient according to the common law to warrant the jury in convicting if it leads their minds to that result, without any other corroboration."

The jury returned a verdict of guilty; and the defendant alleged exceptions to the several rulings and refusals to rule.

*J. Brown*, for the defendant. 1. The second and third instructions were objectionable. The judge should have given instead thereof the instructions requested, or, the instructions given on this point should have been better guarded to protect the rights of the defendant. While it is the province of the court to decide

whether a confession is admissible in the first instance, and, in the absence of threats and promises, confessions are generally admissible, yet the jury have the right to judge as a matter of fact under proper instructions whether a confession is voluntary. If in their judgment it is not voluntary, there is no good reason why they should not have the right to reject it as well as the court, if a threat however slight had been made to induce the confession. In *Commonwealth* v. *Cuffee*, 108 Mass. 285, the court instructed the jury, in regard to the statements subsequent to the original confession, that if the first statement of the defendant was obtained by improper influence, statements made to the same officers afterwards were presumed to be; but whether subsequent statements to other officers were made under the same influence was a question for the jury, and, if they were, they should not be allowed any weight or effect against the defendant. Thus the court held that the question of improper influence was for the jury, though the statement or confession of the defendant was properly admitted as evidence for their consideration.

2. But, if this point is not tenable, injustice was done to the defendant by the instructions as given, without further explanation and caution. The ruling requested had no reference to the competency or admissibility of the evidence, for it was already in; and as the second instruction was intended to be responsive to the request, and no caution or explanation was given as to the effect mere fear would have upon its weight, the jury might fairly infer that they were bound to give it some weight at all events, however reprehensible they might deem the conduct of the officers, in arresting her without a warrant, and not furnishing a scintilla of evidence against her except the confession, and however they might deem the situation of the child, with no friend near, and in prison, might paralyze her mind, and drive her to desperate expedients to obtain her liberty. *Commonwealth* v. *Cullen*, 111 Mass. 435. *Commonwealth* v. *Putnam*, 2 Allen, 301.

3. There was no evidence that would warrant suspicion, much more arrest, before the confession. Her story was therefore uncorroborated in any material point. While courts have held that proof of the *corpus delicti* is sufficient corroboration to warrant conviction, the fact that the defendant admitted the existence of no facts, outside of her own acts, that were not known to every

member of the family, as well as the officers, should at least have entitled her to an instruction that such a confession, procured as it was, should be received with great circumspection if not distrust.

*C. R. Train*, Attorney General, for the Commonwealth, was not called upon.

ENDICOTT, J.  There was evidence that the dwelling house had been set on fire by some one, and there were facts and circumstances pointing to the defendant as the probable incendiary. After her arrest and while in custody, she confessed that she set the fire, and stated how she did it.  This evidence was objected to, but as it did not appear that any threats or promises were made on the part of the officers, it was properly admitted ; and the fact, that the defendant was but fourteen years of age, and under arrest, and made the confession to officers, does not render it incompetent.  *Commonwealth* v. *Cuffee*, 108 Mass. 285.  The defendant then testified that she made the statement under the promise that she should not be prosecuted, and to obtain her release, and that the statement was untrue.

The jury were instructed, that they should give no weight to the confession if it was induced by threats or promises, but if not so induced that such weight should be given to it as they thought it entitled to ; and that threats and inducements might be by acts as well as words.  To this instruction the presiding judge added that mere fear on the part of the defendant did not render the confession incompetent unless induced by some improper conduct on the part of the officers.

This instruction is not open to the objections urged by the defendant.  To avoid the effect of this confession the hope or fear, which led the defendant to confess facts unfavorable to her, must be induced by the threats, promises or conduct of the officers to whom she made the confession.  *Commonwealth* v. *Morey*, 1 Gray, 461.  *Commonwealth* v. *Taylor*, 5 Cush. 605.  *State* v. *Grant*, 22 Maine, 171.  *Rex* v. *Row*, Russ. & Ry. 153.  There was no evidence of promises or other inducements held out by other officers, or other persons, whom she might presume had authority in the premises.  *Commonwealth* v. *Cullen*, 111 Mass. 435.  Fear arising from other causes, and not induced by threats or promises, would not render the confession incompetent, or necessarily affect its weight with the jury.  See 2 Lead. Crim. Cas. (2d ed.) 570, 577.

Upon the facts presented in this case, and there being independent evidence that the crime had been committed, a free and voluntary confession by the party accused would warrant a conviction. *Commonwealth* v. *Howe*, 9 Gray, 110. *Rex* v. *Eldridge*, Russ. & Ry. 440.                    *Exceptions overruled.*