COMMONWEALTH *vs.* THOMAS W. PIPER.

Suffolk. March 16. — 20, 1876. COLT & AMES, JJ., absent.

On the trial of an indictment for murder, it is within the discretion of the court, in the absence of statutory regulations, or a general rule of court, to determine the order in which the right to challenge a juror shall be exercised by the Commonwealth or by the defendant, and no exception lies to the exercise of that discretion.

On the trial of an indictment for murder, a witness testified that he saw the prisoner jump out of a window of a church at about the time the murder was committed, and that soon after he pointed out this window to an officer. *Held,* that it was competent for the Commonwealth to show by the officer what window the witness pointed out to him, for the purpose of identifying more clearly the window referred to by the witness.

On the trial of an indictment for murder, it is within the discretion of the court to determine the order in which testimony shall be introduced, and no exception lies to the exercise of that discretion.

On the trial of an indictment for murder, a witness for the government testified that the defendant, soon after the murder, " took no interest apparently in what was going on; that is, he took no interest in it to ask questions or answer questions." *Held,* that the witness described the acts and appearance of the defendant, as observed by him, and did not testify as to his own opinion or judgment, and that the evidence was admissible.

On the trial of an indictment for murder, a witness for the government testified to certain acts and declarations of the defendant, which were objected to as in the nature of a confession obtained by inducements held out to him by the officer who had him in charge. The officer denied any intention to extort a confession from the defendant. The jury were instructed that, if they were satisfied the defendant made any declaration under the influence of a promise of favor, to reject all such testimony. *Held,* that the rights of the defendant were carefully guarded, and that he had no ground of exception.

On the trial of an indictment for murder, medical experts, who were present at the autopsy and examined the head of the murdered person, testified that in their opinion the injuries to the head could not have been produced at the same time and by one blow. *Held,* that the subject was within the range of their experience as experts, and that the evidence was admissible.

On the trial of an indictment for murder, a witness testified that he had made certain experiments upon a dynamometer, an instrument for the measuring of the force of blows and the weight of falling bodies, by striking it with a bat of substantially the same form and weight as that with which, as the government contended, the murder was committed. *Held,* that the court·might properly in its discretion reject such evidence, as tending to mislead the jury, unless the experiments were shown to have been made under conditions the same as those existing in the case on trial.

INDICTMENT for the murder of Mabel H. Young, at Boston in the county of Suffolk, on May 23, 1875. Trial and conviction before *Colt* and *Lord,* JJ., who allowed a bill of exceptions, the substance of which appears in the opinion.

*E. Avery & E. P. Brown,* for the defendant.

*C. R. Train,* Attorney General, *& W. C. Loring,* Assistant Attorney General, for the Commonwealth.

MORTON, J. 1. The statutes conferring and defining the right of challenge in capital cases contain no provisions as to the order of time in which the right shall be exercised by the government or by the defendant. Gen. Sts. *c.* 172, § 4. Sts. 1862, *c.* 84; 1873, *c.* 317, § 1; 1875, *c.* 167. There is no general rule of court upon the subject, and all directions as to the time when and the mode in which either party shall challenge, except so far as regulated by the statutes, like other matters affecting the proper conduct and order of the trial, are within the discretion of the court. The defendant, therefore,

had no right of exception to the ruling of the court permitting the government to challenge Charles E. Whiting, one of the persons called to serve as jurors, after the defendant had apparently declined to challenge him.

2. The government produced one Glover as a witness, who testified that, about the time the murder was committed, he saw the defendant jump out of the window of the tower of the church on Warren Avenue, and that on the next day, having heard of the murder, he went with officer Savage and pointed out to him the window. The government was permitted to show by officer Savage what window Glover pointed out to him, to which the defendant excepted.

If the government had proposed, as the defendant contends was the case here, to corroborate the testimony of Glover by showing that he had made the same statements as those testified to by him, at other times, it would have been incompetent. *Commonwealth* v. *Jenkins*, 10 Gray, 485. Of this character was the evidence excluded in the case of *Commonwealth* v. *James*, 99 Mass. 438, upon which the defendant relies. But such was not the purpose of the evidence objected to. Its purpose and effect was to identify the window referred to by Glover, and to show with more certainty that it was the window of the tower in which the murder was committed. The principle is the same as in the common case where a witness testifies that he took certain property from the possession of a defendant charged with larceny and delivered it to an officer. The officer is permitted to testify what property was delivered to him, not for the purpose of corroborating the witness, but to trace and identify the property. So in this case, Glover described the window referred to by him as the one which he pointed out to officer Savage. We are of opinion that it was competent for the officer to testify what window was pointed out to him for the purpose of identifying it.

We have considered this question in the same manner as if the testimony of Glover had been introduced before that of Savage. In fact it was introduced after, but the legal effect is the same. By the subsequent introduction of the testimony of Glover, the testimony of Savage was made applicable and competent, and the order in which testimony shall be introduced is within the discretion of the presiding judge, whose ruling is not subject to exception.

3. The exceptions to the testimony of the witness Martin cannot be sustained. It is not necessary to consider whether the question first put to him was unobjectionable in form, because it was withdrawn or modified before the witness answered, and his reply was competent and admissible. He testified that the defendant " took no interest apparently in what was going on ; that is, he took no interest in it to ask questions or answer questions." It is enough to say that his testimony merely described the acts and appearance of the defendant as observed by him, soon after the murder, and did not state his judgment or opinion.

4. The next exception is to the testimony of Mr. Pentecost as to his conversation with the defendant. The defendant contends that the statements made by him in this conversation should have been excluded, because they were induced by threats or promises of Ham, the officer who had him in custody.

The rule of law is well settled, and was recognized at the trial, that confessions of a defendant, induced by fear of personal injury or hope of personal benefit held out by any one in authority, are not admissible in evidence.

When a confession is offered in a criminal case, and the defendant objects that he was induced to make it by threats or promises, it necessarily devolves upon the court to determine the preliminary question whether such inducements are shown. And the finding of the court upon this question cannot be revised upon a bill of exceptions, unless it involves some ruling in matter of law, or the whole evidence is reported with a view of submitting its sufficiency to the appellate court. If the presiding judge is satisfied that there were such inducements, the confession is to be rejected ; if he is not satisfied, the evidence is admitted. But if there is any conflict of testimony or room for doubt, the court will submit this question to the jury with instructions that if they are satisfied that there were such inducements, they shall disregard and reject the confession. *Commonwealth* v. *Cuffee*, 108 Mass. 285. *Commonwealth* v. *Cullen*, 111 Mass. 435. *Commonwealth* v. *Smith*, 119 Mass. 305. In the case at bar, these principles were adopted so far as they were applicable, and the rights of the defendant were carefully guarded. When the testimony of Mr. Pentecost was first offered, it appeared to the presiding justices to be proved by the

testimony of officer Ham, on his cross-examination, that he had held out promises to the defendant to induce him to confess, and they thereupon ruled that confessions induced by such promises were inadmissible.

The attorney for the government then stated that he did not offer a confession of the defendant, but proposed to show his conduct and declarations as showing a consciousness of guilt. The court rightly held that such evidence was admissible. The fact that promises or threats are held out will exclude a confession influenced thereby, but it will not preclude the government from showing independent acts and declarations of the defendant not in the nature of a confession, which tend to prove his guilt.

The witness then detailed the interview with the defendant. The statements of the defendant were not, in form, a confession, but were a denial of his guilt. But we do not deem it necessary to inquire critically whether any part of it can be regarded as in the nature of a confession. If it can be so regarded, the bill of exceptions shows that the defendant is not aggrieved. After Mr. Pentecost left the stand, officer Ham was recalled, and testified that he had not intended to state that he held out any inducements to the defendant, as appeared by the report of the testimony, but had misapprehended the question put to him. He was examined at length upon the subject, and the result was that upon all the evidence the court found as a fact that no inducements were held out to the defendant. This being so, the court could not properly withdraw from the jury the statements made to the witness, Mr. Pentecost, by the defendant, even if they were in whole or in part in the nature of confessions. But the presiding justices did, in accordance with the rule we have stated above, and with a careful regard to the rights of the defendant, instruct the jury that, if they were satisfied that officer Ham held out inducements and the defendant made any statements under their influence, they should reject such statements. This was sufficiently favorable to the defendant, and we are of opinion that he has no ground of exception to the rulings upon this subject.

5. The testimony of Doctors Cotting, Cheever and Foye was **properly admitted.** All of these witnesses were present at the

autopsy of the murdered child and examined her head, and no question was made as to their competency as medical experts. The only part of the testimony objected to at the trial was that to the effect that in their opinion the injuries to the head could not have been produced at the same time and by one blow. This subject was within the range of the experience of medical experts accustomed to observe the effect of blows upon the human head, and was one upon which their judgment would aid the jury. No exception lies to the admission of the testimony.

6. The only other exception relied upon by the defendant is that taken to the exclusion of the testimony of the witness, Hall, offered by him. This witness testified that he was a manufacturer of an instrument known as the dynamometer, for the measuring of the force of blows and the weight of falling bodies; and that he had experimented with a bat of substantially the same form and weight as that with which, as the government contended, the murder was committed. The defendant asked him the question, "With both hands striking upon the dynamometer, what is the greatest registry in pounds that you could get?" which the court excluded. Experiments of this character would tend to confuse and mislead rather than to assist the jury, unless they were shown to have been made under conditions the same as those existing in the case on trial. *Hawks* v. *Charlemont*, 110 Mass. 110. It was not shown in this case that there was a similarity in the conditions of the two events, and the court might properly in its discretion reject the testimony.

*Exceptions overruled.*