# THE PEOPLE OF THE STATE OF NEW YORK, Respond-ents *v.* MICHAEL KURTZ, Appellant.

*Confession of a prisoner — not admitted when induced by a promise that the accused shall obtain the benefit of a State's witness — when the question whether such promise was made should be submitted to the jury — Code of Criminal Procedure, sec. 395.*

In March, 1886, the defendant was arrested in Florida by a special officer of the district attorney of Rensselaer county and an employee of the Pinkerton Detective Agency, for an offense committed in the city of Troy in February, 1884, for which he and another person were indicted in February, 1886. At Washington the party were joined by Robert A. Pinkerton, and at Albany by the district attorney. On arriving at Troy, on Sunday, March 20, the prisoner was taken to the office of the district attorney, where he made a confession to the district attorney in Pinkerton's presence, which was given in evidence on his trial, which occurred on March twenty-fifth. While the party was coming from Washington to the district attorney's office Pinkerton talked with the defendant about the case, the defendant saying to him several times, " What benefit am I to get out of this thing?" to which Pinkerton replied that there could be no promise made to him; that the only benefit that he could get out of the thing, as far as Pinkerton could see, was the benefit that any State's witness would get. When they were in the district attorney's office at Troy Pinkerton said to the prisoner, in the presence of the district attorney: " If you want to make a statement to the district attorney you can do it; you can use your own judgment as to whether you want to make a statement or not; the district attorney will make you no promises."

The district attorney, who was himself sworn as a witness for the people, testi-fied that he said, "Any statement you may make must be voluntary, and you can make one or not as you please," and also stated that he had directed the officers having charge of defendant not to allow any one to speak to him or to accompany him on the way up, and that the defendant was not taken before a magistrate until he was taken into court the next day. At Jersey City the defendant was taken out of the rear end of the train and not brought through the passenger depot, and was thereby prevented from seeing his counsel. While the evidence given upon the trial showed that the crime had been committed, there was nothing to connect the defendant with it (other than the fact of his presence in Troy at the time), except his confession.

*Held,* that the confession was not so clearly shown to have been voluntary as to ren-der it admissible under the provision of section 395 of the Code of Criminal Procedure, excluding confessions "made upon a stipulation of the district attorney that he (the accused) shall not be prosecuted therefor." (Landon, J., *dissenting.*)

The prisoner's counsel asked the court to charge that if the jury found that the alleged statement was made on a stipulation of the district attorney that the prisoner should not be prosecuted therefor, they must reject it. The judge

refused so to charge, but did charge that they might take into consideration any evidence there might be in the case tending to show that such a stipulation was made, in determining whether the statement or confession made in the district attorney's office was or was not true.

*Held,* that although it was not necessary to decide the question in this case, the court were of the opinion that the judge erred in refusing to so charge.

That while the court must decide preliminarily the question as to whether threats or promises induced the confession, yet where this is a question of fact, depending on conflicting evidence, it should be submitted to the jury.

APPEAL from a judgment entered upon the conviction of the defendant, upon his trial under an indictment charging burglary and grand larceny.

Upon the trial of the defendant, the offense was in great part proven by his confession, made to one Pinkerton and the district attorney. The admissibility of this evidence was contested by the defendant on the ground that the defendant was induced to make the confession by the promise of the district attorney that he should not be prosecuted. Pinkerton was asked by the defendant's counsel:

Q. What, if anything, did you say to him about being a witness for the people? A. I said if he desired to make a statement to the district attorney that he could do so; that he must use his own judgment, as Mr. Rhodes would make him no promises; and Mr. Rhodes said that the statement must be voluntary, that he could make no promises. Q. Please repeat just what you said from Washington to the district attorney's office; if you mentioned a fact to him about making a statement to the district attorney? A. On a number of occasions, when talking with him in regard to this case, he would say, "What benefit am I going to get out of this thing?" And I would say to him that there could be no promise made to him; that the only benefit that he could get out of the thing, as far as I could see, was the benefit that any State witness would get. Q. You did tell him that he would get that benefit? A. No; I said the only benefit that I could see he would get would be a benefit under the law that any State witness would get.

In charging the jury the court said: "The question whether the alleged confession or statement was made in the hope of some benefit to come, or by reason of fear, or under some threat, or supposed stipulation with the district attorney that he should not be prosecuted, so far as the competency or admissibility of that evi-

dence is concerned you have nothing to do with. That was a question of law which the court has already passed upon, and whether it was disposed of correctly or incorrectly is of no sort of consequence to you, and is a question which you are not sitting here to review. But I charge you that you may take into consideration any evidence there may be in this case, if you find there is any, tending to show that any such hope or fears were induced in the mind of the defendant, or such alleged stipulation with the district attorney was made, in determining whether the statement or confession that he made in the district attorney's office was or was not true."

The defendant's counsel requested the court to charge that: "If the jury find the witness, Pinkerton, held out to the defendant the hope that in giving the statement to the district attorney he should receive the benefits of a witness for the State, the jury may, from that circumstance and the other circumstances of the case, find that the alleged statement was made upon a stipulation of the district attorney, that he should not be prosecuted therefor, and if they so find they must reject it as evidence in the case. The court: I decline that, but I say they may consider that upon the question of whether the statement, if made, was true or false."

*Peter Mitchell* and *Charles E. Patterson*, for the appellant.

*La Mott W. Rhodes*, district attorney, for the respondent.

LEARNED, P. J.:

The defendant and another were indicted in February, 1886, for burglary in the third, and grand larceny in the first, degree. The indictment also charged that the defendant had previously been convicted and sentenced in Massachusetts for a certain offense, which, if committed in this State, would have been a felony.

The alleged offense for which defendant was indicted was committed February, 1884. He was arrested in Florida in March, 1886, by a special officer of the district attorney of Rensselaer county, and also an employee of the Pinkerton detective agency. At Washington, Robert A. Pinkerton joined them, and they all came through to Troy, the district attorney joining them at Albany. On arriving at Troy, Sunday, March twentieth, the prisoner was taken to the district attorney's office. He was arraigned March twenty-second, tried March twenty-fifth, and convicted.

While in the district attorney's office, on Sunday, he made a confession to the district attorney, in Pinkerton's presence. This confession was given in evidence on the trial; and without it there would be substantially no proof of defendant's guilt, as the court held. The most important question raised in the case is as to the admissibility of this confession, and as to a certain part of the charge relative thereto.

The law on this subject is now contained in section 395, Code Criminal Procedure. In *People* v. *McGloin* (91 N. Y., 241) the court examined many of the former decisions. But it is not intimated that these cases affect the provisions of the Code. Indeed, it is stated that as the crime in that case was committed after the Code took effect, it was governed by its provisions. (See same case, 35 N. Y. Sup. Ct. [28 Hun], 150.)

Then the question must be: Was this confession " made under the influence of fear produced by threats ; " or was it " made upon a stipulation of the district attorney that he should not be prosecuted therefor ? "

That the defendant was under arrest and that the confession was made to an officer, are circumstances which do not exclude it. (*People* v. *Wentz*, 37 N. Y., 303 ; *Cox* v. *People*, 80 N. Y., 500.)

We have examined the evidence and we see no proof of threats. The defendant urges that there was an excited crowd at Troy ; that the defendant was detained in the district attorney's office ; that he was not informed of his right to have counsel; that the influence of the detectives was exerted to induce a confession.

Now, while we are not called upon to commend the course of proceedings of these detective agencies, we are yet unable to see that there was such evidence in this case that the court could properly have excluded the confession as made under the influence of fear produced by threats.

The next position is, that it was made upon a stipulation of the district attorney that defendant should not be prosecuted therefor. While Pinkerton was coming up from Washington to the district attorney's office, he talked with defendant about the case. Several times the defendant said to him, " What benefit am I to get out of this thing ? " The context shows that this meant, " What benefit am I to get out of making a confession ? " And such an inquiry,

made by the prisoner, indicates that Pinkerton had suggested that he should make a confession. Otherwise the prisoner would not have inquired about the benefit to be obtained by " this thing." Pinkerton replied, that there could be no promise made to him ; that the only benefit that he could get out of the thing, as far as Pinkerton could see, was, *the benefit that any State's witness would get.*

When they were in the district attorney's office at Troy, Pinkerton said to the prisoner in the presence of the district attorney : " If you want to make a statement to the district attorney you can do it ; you can use your own judgment as to whether you want to make a statement or not ; the district attorney will make you no promises." What need of promises by the district attorney when his agent, Pinkerton, had intimated to the prisoner that confession would give him the benefit which any State's witness would get ? Why was not that intimation withdrawn by the district attorney ?

The district attorney, who was himself a witness for the people, states that he said : " Any statement you make must be voluntary, and you can make one or not, as you please." He further states that he had directed the officers having charge of defendant not to allow any one to speak to him or to accompany him on the way up, and that defendant was not taken before a magistrate until he was taken into court the next day.

There is much ground to look with suspicion upon this confession. The prisoner had been brought from Florida without his wife, who had been particularly mentioned as not to accompany him, and under directions by the district attorney that no one should be allowed to come with him but the officers. At Jersey City he had been taken out of the rear end of the train, and had not been brought through the passenger depot. He had been thus (and probably with intention) prevented from seeing his counsel. He was kept in the district attorney's office at Troy, and had no counsel, and apparently no one was allowed to come into that office except the officers and the detective and the district attorney. There he was induced to make his confession, and it was written down.

In the case of *Flagg* v. *People* (40 Mich., 706), a confession was obtained in the district attorney's office under very similar circumstances, the detective telling the prisoner he had better make a

statement; and the confession was held inadmissible. The court remarked: " A more serious offense was committed in the efforts to obtain a confession than the respondent was guilty of, even if his confession was true as it was a perversion of the process of the law, — *poisoning of the fountains of justice.*"

Pinkerton had been in communication with the district attorney about this case, and the district attorney had given instructions to Pinkerton in regard to the prisoner. Pinkerton, then, was not a merely unofficial person. He was, to some extent, acting for the district attorney; and what he did and said might be deemed to come from the district attorney, unless it were positively disavowed. It would be most unreasonable, under the circumstances, that what Pinkerton said should not be considered as said in behalf of the district attorney. And simply to say, "your statement must be voluntary," did not so repudiate what the detective had previously said as to take away from the mind of the prisoner the influence which had been exerted. (*Porter* v. *State,* 55 Ala., 95.) In that case two confessions had been made under promises. Before obtaining the third the district attorney assured the prisoner that he could make no promises, etc. But the court held that the third confession was inadmissible; that it should have been explained to the prisoner that the former confessions could not be used against him.

Now, in the present case, the district attorney did not disavow to the defendant the intimation which Pinkerton had previously made that the prisoner might have the benefit of being a State's witness.

We must then consider the language which had been repeatedly used to the prisoner, on the way from Washington, viz., that the only benefit he could get (by confession) was the benefit that any State's witness would get. What did that mean to the prisoner who had been jointly indicted with Porter? Could he not fairly infer that, if he confessed, he would get the benefit which a State's witness would get? If, for instance, the district attorney had himself said to the prisoner: " The only benefit you can get by confession is the benefit any State witness would get." What would this language fairly mean?

It is one of the arts of the detective to intimate, without using straightforward language. Did not Pinkerton mean that the pris-

oner should believe that confession would give him the privilege of a State's witness? And if the prisoner did not so believe, how came he to make that full confession but four days before his trial?

The alleged crime was not recent. It had been committed two years before. The result of the trial showed that, while there was proof that the crime had been committed, there was nothing to connect defendant with it, except his presence in Troy at the time, exclusive of his confessson. It is difficult, then, to believe that the defendant would have confessed, unless under some strong inducement.

A confession made under promise that the prisoner might be used as a State's witness must be rejected. And it was rejected where the proof was that the district attorney testified: " He may have said to him that he might be used as a State witness." (*State* v. *Johnson*, 30 La. Ann., part II, 881.)

Confession on a promise that if the prisoner will turn State's evidence he shall not be prosecuted, was rejected. ( *Womack* v. *State.* 16 Tex. App., 178; *Rex* v. *Rudd*, 1 Leach, 115; *People* v. *Whipple*, 9 Cow., 707.)

Confession made where a person in authority induced the prisoner to believe he would get off better is inadmissible. (By Judge COOLEY in *People* v. *Wolcott*, 51 Mich., 612.)

In *Commonwealth v. Taylor* (5 Cush., 605), the prisoner was in custody of three constables. Two then said they could make him no promises, but if he would make a disclosure, they would use their influence to have it go in his favor. The prisoner made no statement. The next day, without any further promises, he made a confession to the third constable. It was held error to admit the confession. It must be shown that the confession was voluntary before it can be received. (1 Green. Ev., 219 ; *Rex* v. *Warringham*, note to *Rex* v. *Baldry*, 2 Den. C. C., 431.)

The prosecutor, it was said, was bound to satisfy the court that the confession was not obtained by improper means. Thus, where the court below had held that the prisoner must show that threats had been made in order to exclude the confession, the judgment was reversed, and the appellate court held that affirmative proof must be given that the confession was voluntary. (*State* v. *Garvey*, 28 La. Ann., 925; Stephen's Dig. of Evidence, art. 22.)

The learned judge, in commenting upon this language of Pinkerton, said that it " was a statement that under proper circumstances he might — there could be a case in which he could receive some benefit. It was very far from being an inducement." But what proper circumstances were implied? The State witness, it is understood, is to confess and to testify against his associates in the crime. There has been no refusal on the prisoner's part to testify against Porter, indicted with him. What else was he to do to have the promised benefit? What was he to understand from Pinkerton's language?

Now, it certainly cannot be right for the people to take the position that their officer, or one employed by him, used language so deceptive that the defendant believed he had a promise, while, after all, no promise was made him. That was the claim made in *State v. Johnson (ut supra)*, where the district attorney testified : " I *may have* said to him that he *might* be used as a State witness." It certainly cannot be permitted that afterwards the district attorney may decide not to use the prisoner as a State's witness, but to convict him on his confession thus obtained.

The language of the Code, which we are to consider under the light of these adjudged cases, is not accurate. The confession of a defendant is declared to be admissible unless made upon a stipulation of the district attorney that he shall not be prosecuted *therefor*. This grammatically means a stipulation that the defendant shall not be prosecuted *for the confession*. The crime is not mentioned in the section. But the section evidently refers to the practice of permitting one charged with crime to become what was formerly called " an approver," or now a State's witness. (See 4 Bl. Com., 330 ; *Rex* v. *Rudd*, Cowp., 331.)

Now it is not necessary to inquire whether a promise by the district attorney that the accused shall not be prosecuted for the crime is legally binding. Certainly the section means that if, by assurance from the district attorney that the prisoner shall not be prosecuted for his crime, the prisoner has been induced to make a confession thereof, that confession shall not be used as evidence against him. And in looking at this question we must remember the principle of morals, that a promise must be taken against the promissor in the sense in which he believed, or should have believed, it was under-

stood by the promisee. It cannot be permitted that the district attorney, or any one who may justly be believed to act for him, can use language which he must have thought would be understood by the prisoner as an assurance of freedom from prosecution, and can thereby obtain a confession; and yet that the people can use that confession, because before the confession was actually made the district attorney said he could make no promises.

In these remarks we are not criticising the action of the district attorney. Very possibly he did not know what Pinkerton had been inducing the prisoner to believe. But he failed to use such language in his own interview that we can feel assured that all well-grounded expectation of obtaining immunity by confession had been taken from the prisoner's mind. "A confession is deemed to be voluntary if (in the opinion. of the judge) it is shown to have been made after the *complete removal* of the impression produced by an inducement, threat or promise which would otherwise render it involuntary." (Stephens' Dig. of Ev., art. 22.)

It is important that crime should be punished, but it is still more important to uphold sacredly the principle that no one shall be compelled, or under promise of immunity from punishment induced, to accuse himself. It is still more important to protect all, guilty as well as innocent, against confessions improperly obtained; "the weakest and most suspicious of all testimony, ever liable to be obtained by artifice, *false hopes, promises of favor,* or·menaces; seldom remembered accurately or reported with due precision, and incapable in their nature of being disproved by other negative evidence." (4 Black. Com., 357; *Rex* v. *Baldry,* 2 Den. C. C., 431.) In these views we are of the opinion that the confession was not shown to be so clearly voluntary under the aforesaid section that it· was admissible.

It is hardly necessary to discuss at length the other question bearing on this subject, but we will speak of it briefly. The prisoner's counsel asked the court to charge that if the jury found that the alleged statement was made on a stipulation of the district attorney, that the prisoner should not be prosecuted therefor, they ·must reject it. The judge refused, but charged that they might consider that upon the question whether the statement if made was

true or false. Similar questions were presented in various forms and exceptions were taken.

Now, a confession is not conclusive when it is perfectly voluntary. The jury may still consider all the circumstances upon the question whether it was true or false. There might be facts proven which would show that a voluntary confession was false, and the jury would have a right to consider these facts on the question of the falsity of the confession. On the other hand, a confession obtained contrary to section 395 must be rejected, *even though it be true.*

The position of defendant's counsel is that though the court were justified in admitting the confession, where the evidence was conflicting as to the manner in which it was obtained, yet that the jury should reject it if they should find that it was obtained contrary to that section. To illustrate: If a writing were offered in evidence against a prisoner, purporting to be written by him, and if the question were in dispute whether or not it was so written, the court might admit it in evidence, leaving the jury finally to decide whether it was the prisoner's writing or not, and thus to admit or reject it.

The learned judge, in replying to the requests of defendant's counsel, did not say that there were no circumstances connected with the confession for the jury to consider, hence there evidently were such circumstances, but he charged them that the circumstances were to be considered in determining whether the confession was true or false, and not in determining whether it should be accepted or rejected.

The question here presented does not seem to have been decided in this State. In some States it has been decided favorably to the defendant's position. In *Commonwealth* v. *Piper* (120 Mass., 185) it was said: "When a confession is offered in a criminal case, and the defendant objects that he was induced to make it by threats or promises, it necessarily devolves upon the court to determine the preliminary question whether such inducements are shown. * * * But if there is any conflict of testimony, *or room for doubt,* the court will submit this question to the jury with instructions that, if they are satisfied that there were such inducements, they shall disregard and reject the confession." This doctrine had been

recognized in *Commonwealth* v. *Cuffee* (108 Mass., 285); *Commonwealth* v. *Cullen* (111 Mass., 435); *Commonwealth* v. *Smith* (119 Mass., 305), and it was subsequently applied in *Commonwealth* v. *Culver* (126 Mass., 464).

The same doctrine is distinctly laid down in *People* v. *Barker* (27 N. W. Rep., 539) by the Supreme Court of Michigan, where the trial court, after having admitted the confessions, charged the jury to reject them if they found that they were not voluntary. This was held to be correct.

In *Stallings* v. *Georgia* (47 Georgia, 572) a confession was admitted. The court charged : " If you do not believe the confessions were freely and voluntarily made, etc., you will have to reject the confession wholly from your consideration." This was held correct.

In *Holsenbake* v. *Georgia* (45 Ga., 43) it was held that a decision of the judge that confessions are admissible is only *prima facie*. It is his duty to instruct the jury that if they were not freely made they should reject them as evidence.

In *Earp* v. *Georgia* (55 Ga., 136) a confession induced by a promise went to the jury without objection. Defendant's counsel requested the court to charge that in order to make the confession evidence it must appear to the satisfaction of the jury that it was voluntary, etc. The court refused. Held, error. To this line of cases it is possible that *State* v. *Vann* (82 N. C., 631) is an exception. The doctrine contended for by the defendant there seems to be established in these States. It appears to us sound. Whether threats or promises induced the confession may sometimes be a question of fact, depending, perhaps, on conflicting evidence. The court must decide preliminarily. But it is reasonable that then the question of fact, if there be any doubt, should be submitted to the jury. It is not necessary to decide that point in this case in the view we have taken. But it is one of so much importance that we have given it a careful examination.

We need not pass upon the other questions in the case.

The judgment and conviction should be reversed, and new trial granted.

BOOKES, J., concurred.

LANDON, J. (dissenting):

I am unable to concur. The rule respecting the admission of confessions has, as I think, been limited by section 395, Code of Criminal Procedure.

That section says, the confession " can be given in evidence, unless made under the influence of fear produced by threats, or unless made upon a stipulation of a district attorney that he shall not be prosecuted therefor."

Unless this confession was made *under* the fear, or *upon* the stipulation defined by this section, the confession " can be given in evidence." That it was not made under the influence of fear produced by threats, or upon any stipulation of the district attorney, seems clear from the fact that it was made under the influence of hope inspired by a promise suggested by the officer having him in custody, that the defendant would, if he made the confession, have the benefit of a State's witness.

The distinction between a confession made under the influence of fear produced by threats, and a confession procured through seductive influences must have been present to the minds of the legislature. The former is practically a violation of the constitutional provision that no person shall in any criminal case be compelled to accuse himself; the latter is open to no such criticism, but presents simply a question of governmental ethics or policy, over which the legislature has power. That it is a departure from the long established common law rule may be conceded, but the legislature made that departure, and the courts must respect it. If there were otherwise any doubt upon the question it would seem to be settled by the language of the commissioners in their first report of the penal code to the legislature. This report may be found in assembly document 150, for 1855. Section 449 of that report is the original draft of the present section 395. In submitting it the commissioners said : " There is, perhaps, no rule of evidence in criminal cases, which has given rise to more discussion in the courts than that which relates to confessions. It is proposed by this section to declare the rule, so that there may be no doubt hereafter, and at the same time to open the door to confessions in many cases where they are now excluded. The law has been too tender in this respect. It should be its policy, as the commissioners conceive, to let in all the light

possible, trusting to the discretion of juries to distinguish between the false and the true. Confessions not excluded by this rule may be given in evidence, with all the circumstances attending them, and the jury will give such credence to the evidence as its own character and those circumstances may justify."

There was no conflict in the testimony respecting the circumstances under which the confession was made. In no aspect of it could the inference be reasonably drawn that the confession was made under the influence of fear produced by threats; and the district attorney, who refused even to make a promise, as I think, made no representation or statement that could be considered equivalent to a stipulation. Nor do I think this would be suggested, except upon a construction of the statute which the legislature seems to have tried to prevent.

It was, therefore, the duty of the trial court, upon this testimony, to hold that the confession was admissible, and it was proper to instruct the jury that their only duty with respect to it was to consider its truth and effect.

Judgment and conviction reversed and new trial granted.