purpose of aiding Rowland, but for the purpose of saving itself from a greater loss than it suffered by having to complete the contract. We do not regard the circumstances as warranting the finding that Rowland completed his contract or was in any sense entitled to the benefit of the completion of the contract by his surety. Nothing was due him from the city at the time the city was served with the order to appear and answer, and nothing is now due from the city.

*Judgment affirmed.*

PARDEE, P. J., and FUNK, J., concur.

---

LYON v. THE STATE OF OHIO.

*Criminal law—Conclusion of jury upon disputed fact, final— First degree murder—Killing of special policeman assisting deputy sheriffs arresting defendant—Evidence—Proof of other crimes admissible to show motive—Charge to jury—Not error to refuse charge upon assault and battery, when—Misconduct of juror not prejudicial—Wager on result of trial forgotten on voir dire examination— Incomplete affidavit supporting motion for new trial— Failure to state that objection to juror unknown before jury impaneled—Order of exercising peremptory challenges within court's discretion.*

1. Conclusion of jury in determining disputed question of fact is. final.

2. Evidence *held* sufficient to support conviction of first degree murder for killing special policeman assisting deputy sheriffs to arrest defendant.

3. In murder prosecution, admitting proof of other crimes to show motive that prompted defendant deliberately to prepare to kill his victim *held* not error.

4. In prosecution for murder, when death followed from use of deadly weapon, refusal to charge on assault and battery and on assault *held* not error.
5. That juror concealed fact he had accepted wager that defendant would not be electrocuted, forgotten at time of voir dire examination, *held* not to show misconduct to defendant's prejudice, where he was an honest, fair juror.
6. Affidavit supporting motion for new trial for juror's misconduct, which failed to state that defendant or his attorney did not have information of act complained of prior to qualification of juror, *held* incomplete.
7. In absence of statutory regulations or general rule of court, order of exercising peremptory challenges by state and defendant is within trial court's discretion.

(Decided August 5, 1926.)

ERROR: Court of Appeals for Huron county.

*Mr. M. O. Rettig,* for plaintiff in error.
*Mr. Edgar G. Martin,* prosecuting attorney, and *Mr. Frank Carpenter,* for defendant in error.

CUSHING, J. James Lyon, a paroled prisoner from the Mansfield reformatory, was suspected, in February, 1926, of having prior to that time burglarized a number of places in Huron county, Ohio, and of having committed other offenses against the state in other counties in northern Ohio, among them shooting at a deputy sheriff in Wood county.

The office of the American Railway Express Company at Norwalk, Huron county, Ohio, was entered the night of January 31, 1926. The safe was opened and a sum of money and certain property, including a number of revolvers, all the property of the company, were stolen. James Lyon and his brother, Leonard Lyon, were accused

of having committed this burglary and larceny, and a warrant was duly issued for their arrest. A search warrant was issued at the same time, directing the sheriff of Huron county to search the premises where the Lyon boys lived for the said property.

February 18, 1926, the warrants were placed in the hands of Frank A. Adelman and Harley Vincent, two deputy sheriffs of Huron county, who were instructed to arrest the Lyon boys and search the premises described for the stolen property. They repaired to the Lyon home near Havana, Huron county, accompanied by Frank McGrath and James Morgan from the police department of the American Railway Express Company.

On arriving at the Lyon home, they met Leonard Lyon in the yard. Adelman told him the object of their visit and asked where he could find his brother James, to which Leonard replied: "James is not at home; he is at Willard looking for work."

Adelman served Leonard Lyon with the search warrant and directed that he be taken to the room occupied by James Lyon. Leonard conducted the four men, Adelman, Vincent, McGrath, and Morgan, into the house through the kitchen door. Morgan and Vincent remained down stairs; Adelman and McGrath went with Leonard up the stairs, along a hall, and into the room occupied by James. On entering this room, Leonard at once stepped to one side, close to the wall. McGrath and Adelman were confronted by James Lyon. He had a loaded revolver in each hand and ordered the two men to hold up their hands. They complied immediately. James directed Leonard to take the officers' guns from them. This he did. James Lyon, with his

guns pointed at the two officers, backed out of the door of his room, and ordered them to follow. He backed down the hall toward the stairs. McGrath and Adelman followed with their hands above their heads. Leonard was immediately in the rear, with a revolver (those taken from the officers) in each hand. James backed down the steps to the landing. At that instant Morgan started up the stairs. He was immediately covered with a gun and ordered to "stick 'em up." Morgan stepped backward and fell down the stairs, landing on his hands and knees. At that time McGrath jumped down the steps to the landing in an effort to overpower James Lyon. The two men grappled. James Lyon fired a number of shots. One of the bullets entered McGrath's body, passed through his heart, and lodged in his back. Another passed through his collar and neck. A third bullet was imbedded in a door at the head of the stairs.

McGrath died instantly; his body fell down the stairs; Morgan reached for it, and as he was bending over the body James Lyon fired a shot at him. The bullet passed through his clothes over the shoulder, but did not touch his body.

There can be no doubt that McGrath's death was caused by the bullet fired from the revolver by James Lyon. It was the one that passed through the heart. From the powder marks on McGrath's clothes the shot was fired at close range. The revolver could not have been more than two or three inches from him when the shot was fired.

After the shooting James and Leonard Lyon escaped. They took the automobile belonging to the deputy sheriffs, drove it some distance, abandoned it in a town, stole another from the street,

and thus they went from town to town in stolen automobiles, leaving one and stealing another. After the lapse of some time they were finally apprehended near Alpena, Mich. At that time they attempted to shoot the officers pursuing them.

They were returned to Huron county, Ohio. They were indicted in three counts for murder in the first degree. James Lyon was tried on the first and second counts of the indictment, the jury returned a verdict of guilty without a recommendation of mercy, and the court sentenced him to be electrocuted. This action is prosecuted to reverse that judgment.

James Lyon testified in his own behalf. He told of reaching home at 4 o'clock on the morning of the shooting. His story differed in some respects as to what happened when the officers came to the Lyon home. The main point of difference between his story and that told by the officers was as to James Morgan's acts. He claimed that Morgan fired the shot that killed McGrath. He does not claim that Morgan, when he fired, was close enough to McGrath to leave the powder marks on McGrath's coat. But, admitting that that fact was in dispute, it was a question of fact. The jury determined it under proper instructions from the court. The conclusion of the jury is final. It should be observed that the jury did not err in its verdict. Our conclusion is that the verdict is supported by the evidence beyond any doubt.

Several errors of law are assigned from which it is argued that a new trial should be granted: (1) That the state was permitted to offer evidence of other crimes with which James Lyon was charged, as a part of the state's case in chief; (2)

that James Liles was not a ·qualified juror; (3) the refusal of the trial court to charge on the question of assault and battery and assault; (4) error of the court in overruling the peremptory challenge by the defense to juror Glenn Wood.

1. The proof of crimes other than the one on which the defendant is being tried has been approved by the Supreme Court of Ohio in a number of cases. It now seems to be the settled rule in Ohio that, for the purpose of showing motive, it is proper to offer evidence of other crimes of which the defendant has been guilty. One of the questions to be determined by the jury was whether or not James Lyon had a motive for killing the deceased. He had been accused, convicted, and sentenced for the commission of a number of offenses. He was suspected of having committed numerous burglaries and larcenies. He knew he was wanted for shooting at an officer. So, when the officers in question drove up to the Lyon home, he had reason to believe they were after him for the commission of some crime. James and Leonard were up stairs. James was looking out of the window. The inference is clear that he sent Leonard down stairs to meet the officers, while he planned and prepared to escape. A part of his plan was the use of deadly weapons with which he armed himself. His purpose was to kill that he might escape arrest and conviction of a felony. Under the rule stated in *Shelton* v. *State*, 106 Ohio St., 243, 140 N. E., 153, and *Holt* v. *State*, 107 Ohio St., 307, 140 N. E., 349, and the cases therein cited, the trial court did not err in permitting proof of other crimes for the purpose of showing the motive

that prompted James Lyon deliberately and premeditatedly to prepare to kill Frank McGrath.

2. Before proceeding to the technical question presented for determination, it should be observed that in our opinion the trial court did not err in refusing, in its general charge, to charge on assault and battery and assault. It has long been the conviction of the writer that when death follows from the use of a deadly weapon, the trial court should not charge on assault and battery and assault. Such a charge seems to be inconsistent with the charge in the indictment. This view is supported in *State* v. *Schaeffer,* 96 Ohio St., 215, 117 N. E., 220, L. R. A., 1918B, 945, Ann. Cas., 1918E, 1137, *Bandy* v. *State,* 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594, and *State* v. *Champion,* 109 Ohio St., 281, 142 N. E., 141.

Our conclusion is that the court did not err in refusing to charge on assault and battery and on assault.

3. It is claimed that Juror James Liles was guilty of misconduct to the prejudice of the defendant, in that he concealed from the court and defendant the fact that, some time prior to the trial, he made or rather accepted a wager of a box of cigars on the result of the trial of James Lyon.

From the affidavit filed in support of the supplemental motion for a new trial, Robert J. Jarrett attended a meeting of a board of directors, of which board Liles was a member. There was some talk at that meeting about the murder of McGrath. Finally Jarrett voiced his sentiment of law enforcement by offering to bet a box of cigars with anyone present that James Lyon would not be electrocuted. No one answered that challenge. He

finally nudged Liles and said, "Are you taking this?" To which Liles replied, "Yes." Liles, in his reply affidavit, states that the incident above referred to had entirely passed from his mind and was only recalled after the supplemental motion for a new trial, supported by Jarrett's affidavit, was filed in this case. We believe Liles' statement and that he was an honest, fair juror.

The affidavit filed by James Lyon, in support of the supplemental motion for a new trial, failed to state that he or his attorney did not have information of the act of which they complain prior to the qualification of Liles as a juror or the trial of the case.

In the case of *Parks* v. *State,* 4 Ohio St., 234, the court holds:

"Where a motion is made for a new trial in a criminal case, on the ground that one of the petit jurors had, previous to his being called on as a juror, expressed his opinion that the accused was guilty, although, when interrogated in the jury box before being sworn, he answered that he had neither formed nor expressed any opinion on the subject, it is essential that the motion should be supported by an affidavit, showing that the fact of such objection was *unknown,* either to the accused or his counsel, at the time the jury was impaneled."

4. The principal error assigned and argued for a reversal of the case is that the rule stated by the court, by which the parties should be governed in the exercise of peremptory challenges, is contrary to the law of Ohio. The court stated (Record, page 72):

"I think we will now stipulate, at this time, the

rule that will be applied with reference to the exercising of peremptory challenges. That rule will be that the defendant will exercise four or be charged with four challenges by the court, first, and then the state exercise one or be charged with one, and so on, in blocks of four to one.''

''Mr. Rettig: I want to save an exception to that.''

On the next day the following exchange took place:

''The Court: I think we will use the rule, as to the exercising of peremptory challenges, as stated last evening.

''Mr. Rettig: I want to note an exception to that.''

The examination of the jurors occupies more than 118 pages. The rule stated by the court was that when 12 prospective jurors were in the box, the defendant, after examination of the jurors and challenges for cause, could exercise four peremptory challenges, or be charged with four, and the state one, or be charged with one. The record is that the defense exercised its first four peremptory challenges, and the state exercised one; that the defense passed its second four, and the state exercised one; that the defense passed its third four, and the state exercised one; that the defense passed its fourth four, and the state exercised one. Thus, under the rule stated, the defense was charged with sixteen peremptory challenges. At that point Glenn Wood was placed in the jury box as the twelfth juror. He was examined by the court, and both the attorney for the state and attorney for the defendant failed to propound a question to him, although requested so to do by

the court. The state passed for cause, and the defense said, "We pass." The jury was complete, and, as it was about to be sworn, the attorney for the defendant said:

"Now, for the sake of the record, I desire to challenge Mr. Wood."

"The Court: What says the state?"

"Mr. Martin: We have nothing to say to this challenge. What is the ground of the challenge?"

"The Court: Is your challenge for cause?"

"Mr. Rettig: No. Peremptory."

"The Court: Overruled."

Exception by the defendant.

There is no doubt that in this case the prospective jurors were summoned according to law. The defendant was furnished a list of the panel, 12 jurors were in the box, the defendant was in court to meet the jurors face to face. A number of prospective jurors were excused for cause. The defendant was permitted to challenge jurors for cause, and was given an opportunity to exercise the 16 peremptory challenges allowed by law.

Defendant now claims that the order of the trial court, above stated, is contrary to law. He cites in support of that contention the case of *Koch* v. *State,* 32 Ohio St., 352. In that case it was said:

"When the juror Rice was called into the panel, it was a new jury, and the defendant, having up to that time exercised but one peremptory challenge, had the legal right to peremptorily challenge any one of the jurors."

In the case at bar the defendant below exercised 4 peremptory challenges and passed 12, under the rule of court stated, and when Glenn Wood was

placed in the jury box he claimed the right to challenge him peremptorily.

As we view the decided cases in Ohio, the *Koch case, supra,* is not an authority by which the trial court should have been guided in the selection of the jury in this case. Koch was tried for a misdemeanor. Each side had 2 peremptory challenges. The trial court did not make an order or announce any rule by which the parties were to be governed in the exercise of the peremptory challenges allowed by law.

The trial court in the case at bar stated the rule by which the parties would be governed in the exercise of their peremptory challenges. This rule was stated when the panel contained 12 jurors that had passed the examination for cause; and up to that time no peremptory challenges had been exercised. The law of Ohio, and of many other states, and of the United States as well, is settled that in the absence of statutory regulations, or a general rule of court, the order of exercising peremptory challenges by the state and the defendant is within the discretion of the trial court. The Supreme Court of the United States, in *Pointer* v. *United States,* 151 U. S., 396, at page 410, 14 S. Ct., 410, 415 (38 L. Ed., 208), states the rule thus:

"But the general rule is, that where the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court."

See, also, *Commonwealth* v. *Piper,* 120 Mass., 185; *Schufflin* v. *State,* 20 Ohio St., 233; *Benigno* v. *State,* 16 Ohio App., 383, and numerous other cases.

The *Pointer case* was decided 16 years after the

*Koch case* and 23 years after the *Schufflin case.* In citing the *Schufflin case,* and ignoring the *Koch case,* the Supreme Court of the United States approved the rule stated in the *Schufflin case* and cited it as an authority for the rule then established for the United States courts.

The rule stated is supported by decisions in many of the states. Schufflin was on trial for murder in the first degree. At that time the defendant, by statute, was given 23 peremptory challenges. The trial court by order required the state and the defendant to exercise both a challenge for cause and a peremptory challenge as to each juror as he was called to the box and examined. This was held not to be error. The court in its opinion, at page 234, said:

"The mode of impaneling a jury in capital cases adopted by the court below has long been in practice in many counties of the state, and we see no error in it to the injury of the defendant. The law guarantees to him the right to challenge for cause, and to make 23 peremptory challenges, but it leaves wholly to the discretion of the court the means and manner of administering that right. We are not prepared to say that the method adopted in this case was not reasonable, and calculated to carry out substantially and fairly the provisions of the law."

Our conclusion is that the plaintiff in error had a fair and impartial trial; that the verdict is sustained by evidence beyond a doubt; that the court did not err in failing to charge on assault and assault and battery; that the juror Liles was a qualified juror; that the jury was selected accord-

ing to the law of the state of Ohio; and that the judgment of the trial court should be affirmed.

*Judgment affirmed.*

SHIELDS and HOUCK, JJ., concur.

CUSHING, J., of the First Appellate District, and SHIELDS and HOUCK, JJ., of the Fifth Appellate District, sitting in place of RICHARDS, WILLIAMS and YOUNG, JJ., of the Sixth Appellate District.