HARRY J. JAQUITH vs. SELECTMEN OF WELLESLEY.

Suffolk.    January 14, 1898. — May 19, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Mandamus — Statute — Appointment of Registrars of Voters from the Two leading Political Parties.*

The only test given in St. 1893, c. 417, as to the appointment of registrars of voters from the two political parties which at the next preceding State election were the two leading political parties is, that the registrar shall act with that one of the leading political parties which he was appointed to represent; and it is not required that he shall be recognized as in regular standing by, or shall in all things act with, the predominant faction or division of that leading political party.

PETITION for a writ of mandamus commanding the selectmen of the town of Wellesley to remove one John H. Sheridan from his office as registrar of voters in said town, and inasmuch as one Beebe and one Kingsbury, town clerk, members of the board, were representatives of the first leading political party

at the last State election, that the selectmen be directed to appoint two members of the second political party at the last State election to the vacancies now existing and so created. Hearing before *Knowlton*, J., who dismissed the petition, and the petitioner alleged exceptions, in substance as follows.

The petitioner on May 10, 1897, filed a written complaint with the selectmen of Wellesley, under St. 1893, c. 417, §§ 28, 29, and 30, stating that one John H. Sheridan, who, on April 21, 1897, had been reappointed a registrar of voters to represent the Democratic party by the selectmen of Wellesley, had ceased to act with said party, and requesting his removal. On June 4, the Democratic town committee of Wellesley voted that Sheridan had ceased to represent that party, because he " bolted the nominations of that party at the last State election." On June 22, a hearing was had before the selectmen, and the foregoing vote was put in evidence, together with oral evidence showing that Sheridan had admitted that he did not support the money plank of the Chicago platform, nor the planks referring to the Supreme Court and Federal judges, and had said that he had voted the Gold Democratic ticket at said election. At the hearing, the selectmen ruled that Sheridan need not answer questions asking him what ticket he supported at the polls at the State and national election, and that the petitioner could not go into that question. Sheridan testified that he had always acted with the Democrats, but did not deny any of the foregoing evidence. The selectmen decided that it was not shown that Sheridan and another registrar (who died after the decision) had ceased to act with the Democratic party, and declined to remove them.

The petition in this case alleged that the selectmen acted at the hearing with the wilful intent to defeat the purpose of the law, in excluding evidence offered in support of the complaint and that their decision was wilful, and in bad faith and in defiance of the provisions of the statute. None of the evidence tended to show that these allegations were true, and two of the three selectmen, being called as witnesses by the petitioner, testified that they acted in good faith and according to their best judgment.

At the hearing the above facts were put in evidence, and Sheridan admitted that he did vote for the candidates known as

the Gold Democratic candidates at the last election, and did not support the financial and other planks of the Chicago platform. He then testified that he intended to support the Democratic party at the polls on the next election. The respondents also testified, in their own behalf, that they did not know when they appointed him, nor at the hearing before them, how Sheridan had voted at the previous election, but made their decision in good faith, giving as the only reason for their finding that Sheridan had always been a Democrat.

At the close of the evidence the petitioner requested the court to give the following rulings:

" 1. If the court shall find that the Democratic town committee of Wellesley had declared by vote that Sheridan was no longer a member of that party prior to the hearing before the selectmen for his removal, and that said vote was put in evidence at the hearing, then the court is bound as matter of law to grant the relief prayed for.

" 2. If the court shall find that Sheridan did not vote for the candidates for Governor and Presidential Electors of the Democratic party, so named on the official ballot, at the State and national election of 1896, then the court is bound as matter of law to grant the relief prayed for.

" 3 If the court shall find that Sheridan did not support the financial principles declared in the platform of the Democratic party, so named on the official ballot, during the State and national campaign of 1896, then the court is bound as matter of law to grant the relief prayed for.

" 4. If the court shall find that Sheridan did not support the candidates for governor and presidential electors of the Democratic party, so named on the official ballot, at the State and national election of 1896, and did not support the financial principles declared in the platform of said party, then the court is bound as matter of law to grant the relief prayed for.

" 5. Membership in a political party, as required by §§ 28 to 30 of St. 1893, c. 417, is to be determined by the acknowledged members of that party; and no man can lawfully be appointed to or be retained in an office as a representative of a party under said act when the acknowledged members of that party deny his membership and demand his removal.

" 6. If the selectmen of Wellesley, at the hearing for the removal of Sheridan, refused to admit competent evidence material to the issue, then the petitioner is entitled to bring this petition for a writ of mandamus."

The judge refused to give the foregoing rulings.

*W. R. Bigelow*, (*H. J. Jaquith* with him,) for the petitioner.

*H. Albers*, for the respondents.

BARKER, J. Registrars of voters must be so appointed that the members of every board of registrars shall equally, or as equally as possible, represent the two political parties which at the next preceding State election were the two leading political parties. St. 1893, c. 417, § 28. " Whenever upon written complaint . . . to the selectmen of a town, and after notice and hearing, it shall appear that a registrar of voters other than the . . . town clerk has ceased to act with the political party which he was appointed to represent, the . . . selectmen . . . shall remove such registrar from office." St. 1893, c. 417, § 29. St. 1898, c. 548, § 418.

The petitioner having made a written complaint to the respondents, the selectmen of Wellesley, that two registrars appointed to represent the Democratic party had ceased to act with that party, the respondents upon hearing the complaint decided that it was not shown that the registrars had ceased to act with the Democratic party, and declined to remove them from office. One of these two registrars having died after this decision, the petitioner now asks a writ of mandamus commanding the selectmen to remove from office the survivor of the two registrars, and to " appoint two members of the second political party at the last State election to the vacancies now existing and so created." The petition alleges that the selectmen acted at the hearing with the wilful intent to defeat the purpose of the law, in excluding evidence offered in support of the complaint, and that their decision was wilful, and in bad faith and in defiance of the provisions of the statute. The petition for mandamus has been heard and dismissed by a single justice of this court, and, the petitioner having excepted to the refusal of the single justice to give certain rulings, those exceptions have been entered and argued in the full court. The bill of exceptions purports to state all the evidence. None of it tends to

show that the allegations of the petition which charge the select-
men with bad faith, or with acting with an intent to defeat the
law, were true, and two of the three selectmen, being called as
witnesses by the petitioner, testified that they acted in good faith
and according to their best judgment, and we assume that it was
so found by the single justice who dismissed the petition. We
do not consider, and do not now decide, whether this court,
under the provisions of St. 1897, c. 530, § 20, or under its juris-
diction to entertain petitions for mandamus, will at the suit of
an individual issue its writ to command officers like the respond-
ents to reverse their official action in removing or refusing to
remove, or in appointing or refusing to appoint, officials like
registrars of voters, when such official action has been taken
after a hearing conducted in good faith, and the decision has
been arrived at in good faith. Nor do we consider or decide
whether a request for a writ of mandamus to compel the re-
moval of one registrar could be joined with a request to compel
the same respondents to appoint to a vacancy occasioned by
death, and another vacancy to be filled by the removal for
which the petitioner asks, there being nothing to show that the
respondents have refused or neglected to proceed to fill the
vacancies according to law.

The petitioner's requests for rulings all proceed upon the
theory that the two leading political parties are to be deter-
mined only by ascertaining the political platforms upon which
candidates voted for at the time of the last State election were
officially nominated, ascertaining the number of votes cast at
such election for the respective candidates, and designating as
the two leading political parties that body of persons which
adheres to all the declarations of the platform and supports all
the candidates nominated upon the platform. Besides this gen-
eral theory the first request assumes that a political town com-
mittee can authoritatively declare by vote that a former member
of its political party is no longer such a member, and that the
status of the person named in the vote is thereby conclusively
determined, and is binding upon all officials and courts who
may be called upon to consider the question. Under the sec-
ond request it is made essential that the person who is to be
counted as a member of a political party must have voted at the
next preceding election.

Without discussing these requests in detail, we are of opinion that they were all properly refused. The words "the two leading political parties" in the election laws are not used in the sense for which the petitioner contends. The purpose of the election and caucus laws is to enable those who have the elective franchise to exercise it freely and safely, and to make it certain that the will of the electors thus exercised shall be truly ascertained and given effect. It is not the purpose of these laws to enforce discipline within any political party, or to enable one division or faction of a political party to obtain or to retain control of the party organization. The history which shows that we have always had "two leading political parties" shows also that generally one or both of these leading political parties is made up of factions or divisions neither of which assents to or supports all of the declarations or candidates of the other division, while yet the members of these factions or divisions act with the leading political party to which they belong in opposing generally the declarations of political faith and the candidates of the other leading political party. For many years the two leading political parties were the Whigs and the Democrats. Then for a short interval the Native Americans or "Know-Nothings" were a leading political party. Since that time the two leading political parties have been the Republicans and the Democrats, and there never has been a time when all the members of either of those parties subscribed to all of the same declarations of principles, or supported all of the party candidates. The only test given in the particular statute now under consideration is that the registrar shall act with that one of the two leading political parties which he was appointed to represent. It is not required that he shall be recognized as in regular standing by, or shall in all things act with, the predominant faction or division of that leading political party.

*Exceptions overruled.*