COMMONWEALTH *vs.* JOHN ROGERS & others.

Suffolk. March 4, 1902. — April 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Constitutional Law*, Caucus laws. *Elections*, Caucus. *Conspiracy*. *Pleading*, *Criminal*, Indictment. *Practice*, *Criminal*, Preliminary finding of fact, Exceptions. *Evidence*, Admissions and Confessions, Testimony of fellow conspirator.

Those provisions of the election act, St. 1898, c. 548, which regulate caucuses and voting at them are constitutional.

The provision of St. 1898, c. 548, § 91, that no person having voted in the caucus of one political party shall be entitled to vote or take part in the caucus of another political party within the ensuing twelve months, is valid.

St. 1898, c. 548, § 92, requiring voting lists to be used as check lists in balloting at caucuses, is valid.

A count for conspiracy to procure illegal voting and a count for aiding and abetting illegal voting are for offences similar in their nature, mode of trial and punishment and may be joined in one indictment at common law.

On an indictment for a conspiracy to procure persons to vote at a caucus who were not entitled to vote there, the conspiracy might be completed before any of the persons to be procured had been agreed upon, and the particular nature of the disqualification is not material to the offence and need not be alleged in the indictment.

However it may be as to an indictment for illegal voting, *semble*, that on an indictment for abetting certain persons not entitled to vote in voting at a caucus, it is not necessary to allege the particular disqualification, *but*, if the failure to do so is a defect, it is one of form and can only be taken advantage of by special assignment.

An indictment, for conspiring to procure persons to vote at a certain caucus who were not entitled to vote there, is not bad because under its charges the conspiracy might be to procure votes which were illegal for different reasons under St. 1898, c. 548, §§ 377, 378, and to abet contrary to § 390 of that statute, the offences punished under these sections being different, since the conspiracy alleged is one, and properly might be alleged to intend them all.

Under St. 1899, c. 409, § 10, an indictment, for conspiring to procure persons to vote illegally at a certain caucus, need not state the place of the offence.

On the trial of an indictment for conspiracy to procure persons to vote illegally at a caucus, there is no variance if it appears that when the conspiracy was formed the conspirators did not know any of the persons named in the indictment as the persons to be procured, and that one of them was not spoken to until twelve o'clock on the day of the caucus when all the plans were complete. In such a case the fact that the conspiracy is indictable in its initial stages does not prevent its being indicted in the shape which it ultimately assumes.

If a caucus is called for a certain hour, and, it being known that the regularly elected warden will be absent, a temporary warden is elected a few minutes before the hour named to fill the vacancy and when the caucus opens and thereafter acts as warden, *semble*, that the election of the warden is good under St. 1898, c. 548, § 129, giving the power to fill vacancies "at a caucus." *At any rate*, there is a warden *de facto*, and the votes cast at the caucus will not be affected by the irregularity.

An indictment for aiding and abetting illegal voting at a caucus is none the less sustained because it appears that there were informalities at the caucus, if they did not make the vote of the caucus void.

At the trial of an indictment for a conspiracy to procure persons to vote illegally at a certain caucus, an exception was taken to a refusal to rule, that no unfavorable inference should be drawn against one of the defendants, who acted as *de facto* warden at the caucus, because he delayed for half an hour in opening the caucus, if that delay was on account of the enclosures or pens outside the guard rail. There was independent evidence, that the delay was for the purpose of facilitating the carrying off of certain ballots and giving time to take them to the place where the fraudulent voters were assembled. *Held*, that the ruling rightly was refused.

At the trial of an indictment for a conspiracy to procure persons to vote illegally at a certain caucus, the presiding judge, as the ground for admitting the declarations of one defendant as evidence against the others stated his ruling that there was sufficient evidence of a conspiracy against all the defendants. *Held*, that the ruling was right and the statement of it proper. When a preliminary finding of fact on the part of the judge is necessary for such a purpose there is no duty to conceal it from the jury.

On a trial for conspiracy, declarations of the several defendants, admissible against themselves but not against the others, may be admitted, the jury being cautioned that statements made after the conspiracy had been carried out are admissible only against the party making them.

At the trial of an indictment for a conspiracy to procure persons to vote illegally at a certain caucus, evidence that fraudulent voters were spoken to by one of the conspirators before all of .them had come into the scheme is admissible, in connection with proof that the others did come in and by implication adopted the act, and because the usual way of proving a conspiracy is by showing a series of acts on the part of the several defendants all converging to one point.

A remark of a district attorney in the course of a trial is not the subject of exception.

On a trial for conspiracy the weight of the testimony of fellow conspirators properly is left to the jury.

At the trial of an indictment for a conspiracy to procure persons to vote illegally at a certain caucus, it was *held*, that there was sufficient evidence to go to the jury of the guilt of one of the defendants, who was present at the preliminary meetings, which were held in his house, and who contributed money toward the illegal scheme and helped at the time of the caucus.

HOLMES, C. J. This is an indictment in ten counts charging the defendants with conspiring to procure certain persons to vote at a republican caucus, who were not entitled to vote there, and with aiding and abetting certain persons not entitled to vote in illegally voting at the same caucus. Probably in consequence of the number of counsel engaged scarcely a step was taken in the case without objection, and we shall not feel called upon to discuss each of the innumerable exceptions at length or to go much beyond the arguments addressed to us.

A motion to quash was made on behalf of the defendants Winsloe, Newmarch and Lord, and another on behalf of the defendant Rogers. The former raises the question of the constitutionality of those parts of the election act, St. 1898, c. 548, which regulate caucuses and voting at them. The right of the Legislature to pass laws which provide " an easy and reasonable mode of exercising the constitutional right " and which are " calculated to prevent error and fraud, to secure order and regularity in the conduct of elections, and thereby give more security to the right itself," is settled. *Capen* v. *Foster*, 12 Pick. 485, 490. *Kinneen* v. *Wells*, 144 Mass. 497. *Jaquith* v. *Wellesley*, 171 Mass. 138, 143. Here, as elsewhere, (it might be said especially in matters of constitutional law were the fact not universal,) it is vain to point out that the difference upon which a legal distinction is based, — here the difference between seemingly useful or harmless legislation and a clearly void restriction, — is one of degree, and to ask where you are going to draw the line, as is done by the defendants. Some legislation is permissible and necessary. A line between cases differing only in degree is worked out by the gradual approach of the decisions grouped about the opposite poles. Objections, to deserve consideration, must be specific.

The regulations in question provide and govern merely a means by which political parties may get the names of their candidates

printed upon the official ballot, and they must govern if they are to provide them. The statute gives another means by nomination papers. § 140. It does not prevent any one from voting for any other persons than those whose names are printed on the ballot or prevent people from meeting without regard to the statute, concerting their action and preparing pasters to be used upon the ballot. It does not interfere at all with the final vote for State officers, representatives and senators, which it is the most obvious purpose of the Constitution to protect. See *Cole* v. *Tucker*, 164 Mass. 486, 487. We may assume for purposes of decision that legislation for the limited purposes of the sections in question is subject to the protection of the right to vote secured by the Constitution. But if it is, which we do not decide, the remoteness of what it affects from the final vote is to be borne in mind when we have to decide whether it only embodies reasonable precautions or trenches upon political rights. It would be a strange inversion to say that no laws can be passed upon the mode of voting at a preliminary meeting held only for the purpose of getting names printed upon an official ballot when laws can be passed affecting the final vote. The Legislature has a right to attach reasonable conditions to that advantage, if it has a right to grant the advantage. Whether the defendants mean to deny that right or to contend that, if any names are printed those of all possible candidates should be, is not very clear. We see no reason to doubt that the provision for printing names presented by a fixed minimum of voters in the specified way is proper. Indeed that hardly is an open question. It is settled that the rights of others are protected by the provision for blank spaces. *Cole* v. *Tucker*, 164 Mass. 486, 488. Practically it is settled that there is no ground of complaint in the obviously necessary restrictions upon the number of names to be printed. *Miner* v. *Olin*, 159 Mass. 487. The suggestion that it is a hardship upon a voter who can write nothing but his own name is really an objection to the ballot in general, and, with the objection that the statute is class legislation, is disposed of by the cases cited. See further *De Walt* v. *Bartley*, 146 Penn. St. 529; *Ransom* v. *Black*, 25 Vroom, 446.

One specific objection urged is that by § 91 no person having voted in the caucus of one political party shall be entitled

to vote or take part in the caucus of another political party within the ensuing twelve months. It seems to us impossible to say as matter of law that this is not a reasonable precaution against the fraudulent intrusion of members of a different party for sinister purposes.

It is objected further that an attempt is made to require greater qualifications for voting than are required by the Constitution, by the provision for the use of the voting lists as check lists, and the denial of the right to vote to those whose names do not appear upon the lists. It is suggested that the registration under §§ 36–38 may be closed twenty days before the caucus, so that persons who become qualified in the interim are not allowed to vote. For the purposes of a preliminary meeting, this again does not seem to us an unreasonable precaution, and we cannot say as matter of law that the time allowed is unreasonable. The actual interim presumably will be much less, under the requirement that the registrars hold at least one session on or before the Saturday last preceding the first caucus preceding the annual State election. The provision in § 50 for registering minors who will reach full age before the election day must not be forgotten.

The statute is objected to as requiring illegal taxation because the city or town must bear the expense of the caucuses, and thus taxpayers are made to contribute to the support of a party or parties which they do not approve. The disapproval of a minority does not exempt them from bearing their share of public burdens while they continue to live in a State which they are free to leave. The expense, considered as a whole, is for the purpose of making it easier and more certain that the community shall elect the public officers whom it wants. This is not the less a public purpose that a part of the expenditure necessarily is for the separate convenience of the separate groups out of whose action emerges the expression of the public will.

The motions to quash set up that the indictments are bad on other grounds beside the supposed invalidity of the statute. It is said that there is a misjoinder of counts. But conspiracy to procure illegal voting and aiding and abetting in illegal voting are " similar in their nature, mode of trial, and punishment." *Commonwealth* v. *Leach,* 156 Mass. 99, 101. *Pettes* v. *Common-*

*wealth*, 126 Mass. 242, 245. The latter is punished by imprisonment in jail not exceeding one year, St. 1898, c. 548, § 390, the former conformably to the common usage, and practice in the State, Pub. Sts. c. 215, § 1. (R. L. c. 220, § 4.) In either case imprisonment might be in the house of correction instead of in the jail. Pub. Sts. c. 215, § 3. (R. L. c. 220, § 5.) It was not necessary to aver that the different counts were different descriptions of the same offence. The offences intended to be charged were different, and the joinder was permissible at common law and did not depend upon Pub. Sts. c. 213, § 18. (R. L. c. 218, § 45.) *Commonwealth* v. *Ismahl*, 134 Mass. 201. We see no injustice and no embarrassment in the conduct of their case of which the defendants can complain.

It is said that the first count is bad because it does not show how the persons whom the defendants conspired to procure to vote were not entitled to vote. The allegation embraces persons unknown so that the requirement is impossible, and this illustrates the fact that such a conspiracy might be completed before any of the persons to be procured had been agreed upon. But it follows from that fact that the particular nature of the disqualification is in no way material to the offence. Therefore it seems to us unnecessary to the defence to require it to be alleged. In *United States* v. *Cruikshank*, 92 U. S. 542, the object of the conspiracy was not stated with reasonable certainty. Perhaps it is only another form of words for the same thought to say that the mode of disqualification is a fact one degree more remote than the principal constituent elements of the crime, and that for that reason the disqualification may be alleged in general terms. See cases cited in *May* v. *Wood*, 172 Mass. 11, 15 ; *State* v. *Marshall*, 45 N. H. 281, 285, 286. There is no doubt that the count set forth a crime at common law. See *Commonwealth* v. *Silsbee*, 9 Mass. 417 ; *Commonwealth* v. *Hoxey*, 16 Mass. 385 ; *Commonwealth* v. *McHale*, 97 Penn. St. 397, 408 ; *Commonwealth* v. *Waterman*, 122 Mass. 43, 57. See further St. 1898, c. 548, § 377.

It may be worth remarking that *Commonwealth* v. *Boynton*, cited in *Commonwealth* v. *Hunt*, Thach. Crim. Cas. 609, 640, and in *Commonwealth* v. *Waterman*, is not an authority, as it appears from the records that the allegation of conspiracy was merely

inducement to an allegation that the goods actually were obtained by the false pretences. Records of Supreme Judicial Court, [Vol. 3] 1803, fol. 82, 83 *a.*

A similar objection is made to the other counts for abetting in voting persons not entitled to vote. This is urged under the fifth reason of Rogers's motion to quash, viz. that the second count alleges no offence and that the other counts are defective, informal and insufficient, and do not set forth with legal precision any offence known to the law ; and under similar reasons in the other motion. The defect, if there is one, is formal and should have been assigned specifically. Pub. Sts. c. 214, § 25. *Commonwealth* v. *Donovan,* 170 Mass. 228, 235. If we were to consider the objection, we should be inclined to regard the allegation as sufficient. In addition to what has been said already, the counts follow the language of the statute. St. 1898, c. 548, § 390. *Commonwealth* v. *Connelly,* 163 Mass. 539, 541. The allegation is a mere negative. A few persons are entitled to vote at a given place and time. The rest of the world are not. It seems an excess of formality to require a more detailed denial of the specific marks which constitute a qualification to vote. They all are denied by the phrase " not entitled to vote." However it may be in an indictment for unlawful voting, (and the reasoning in *People* v. *Neil,* 91 Cal. 465, 469, *State* v. *Moore,* 3 Dutcher, 105, 110, and the old precedents on the game laws there cited, does not seem to us convincing,) we are not prepared to make so strict a requirement in an indictment for abetting, notwithstanding the decision in *State* v. *Tweed,* 3 Dutcher, 111. See *Commonwealth* v. *Shaw,* 7 Met. 52 ; *State* v. *Marshall,* 45 N. H. 281 ; 2 Whart. Prec. Ind. (4th ed.) 1019 ; *State* v. *Douglass,* 7 Iowa, 413. If necessary, we might refer also to St. 1899, c. 409, §§ 5, 6, 13, 27 ; *Commonwealth* v. *Dill,* 160 Mass. 536, 537.

It is argued that the first count is bad because it charges or may charge conspiracy to procure votes which are illegal under either § 377 or § 378, and to abet contrary to § 390. The offences punished in these sections are different, but the conspiracy alleged is one, and properly might be alleged to intend them all. *Commonwealth* v. *O'Brien,* 12 Cush. 84, 92. Compare *Commonwealth* v. *Moody,* 143 Mass. 177. It is punishable to conspire to

procure any kind of unlawful voting, whether it be the voting of an unregistered voter or the voting of one who had voted in the caucus of another party within a year.

The only further observation necessary to be made concerning the motion to quash or the indictment is that by reason of St. 1899, c. 409, § 10, it was not necessary to state the place of the offence, and that this disposes of what otherwise would be the most serious trouble with the first count.

The next proposition argued for the defendants is that the first count was not proved as laid. This conclusion is reached by an odd perversion of the principle that the offence of conspiracy is committed as soon as the combination or agreement is made. It is said that the defendants had made their plot before they knew any of the persons named in the first count as the persons to be procured, and more especially that one of those persons was not spoken to until twelve o'clock on the day of the caucus, when all the plans were complete. No doubt a conspiracy was entered into before it was decided who were the men to be used. But that conspiracy was enlarged with each new item that entered into the plan while it still was on foot, just as it might be enlarged in the number of its members, and, when the men who were to be used for illegal voting were identified as the men gathered in a certain room, the conspiracy became a conspiracy to procure those men to vote. The fact that it was indictable in its more meagre and unfledged form did not prevent its being indicted in the shape which it ultimately assumed. We may admit for the purposes of decision that, under *Commonwealth* v. *Harley*, 7 Met. 506, and *Commonwealth* v. *Kellogg*, 7 Cush. 473, it was necessary to prove the names laid in the count. See *Commonwealth* v. *Meserve*, 154 Mass. 64, 73. But if the men were identified before the plot was over, of course it no more matters that they were not identified by name than it matters in the proof of an indictment for an attempt to kill a certain man that the defendant did not know his name when he shot at him.

It next is argued that the caucus was not legally held, as the jury were instructed that it must be proved to have been in order to sustain the counts for abetting. This is maintained in the first place because the warden was elected a few minutes before four on the ground of a temporary vacancy, whereas the

caucus was called for four o'clock, and, by § 129, the power to fill vacancies is given only "at a caucus." It was known that the regularly elected warden would be absent, so that it would be a strong thing to say that the election was not sufficient when the caucus opened. But at least there was a warden *de facto* and a meeting at which votes were cast effectively. See *Commonwealth* v. *Sullivan*, 165 Mass. 183, 185 ; *Rounds* v. *Smart*, 71 Maine, 380, 387 ; Paine, Elections, c. 17. Voters are not to be disfranchised without clear words. *O' Connell* v. *Mathews*, 177 Mass. 518, 521. *Bowers* v. *Smith*, 111 Mo. 45, 55, 56. Paine, Elections, 314, § 368. But if the meeting was effective for the purpose for which it was called, fraudulent voting would accomplish the harm which the law seeks to prevent, and it would be absurd to allow it to go unpunished on the ground of informalities which did not make the vote of the caucus void. The same consideration makes the presence of pens outside the guard rails and of unauthorized persons within them, the possible absence of sufficient booths and the delegation of the duty of arranging two or more lines of voters, § 105, immaterial to the case. *Bowers* v. *Smith*, 111 Mo. 45. *Moyer* v. *Van De Vanter*, 12 Wash. 377, 385. *Simons* v. *People*, 119 Ill. 617. *Drogheda Election Petition*, 9 Ir. L. T. R. 161.

An exception was taken to a refusal to rule that no unfavorable inference should be drawn against Lord, the *de facto* warden, one of the defendants, because he delayed for half an hour in opening the caucus, if that delay was on account of the enclosures or pens outside the guard rail. There was independent evidence that Lord was in the conspiracy, and that it had been suggested that he should facilitate the carrying off of the ballots, which was one part of the scheme. This he could not do until the ballots were delivered to him at the caucus. § 120. After refusing to open the caucus for some time, he did so at once, at about half past four, on a whisper from the defendant Winsloe. There was a fair argument that he agreed to the suggested plan, and made the delay in order to give time for the ballots to be carried over to the place where the fraudulent voters were assembled. The ballots arrived there about five. Further answer to this exception seems unnecessary.

Exceptions were taken on the ground that the presiding judge

charged upon the facts.   We deem it unnecessary to discuss the charge.   We are of opinion that it was perfectly fair and sedulously avoided expressing the opinion of the judge.

A few general observations will dispose of the argument in support of the many exceptions to evidence.   The presiding judge rightly ruled that there was sufficient evidence of a conspiracy against all the defendants.   It was proper to make the statement as the ground for admitting declarations of one as evidence against the others.   When a preliminary finding of fact is necessary on the part of the judge for such a purpose there is no duty to conceal it from the jury.   *Commonwealth* v. *Brown*, 14 Gray, 419, 425, 432.   *Commonwealth* v. *Scott*, 123 Mass. 222, 235.   The admissibility of the evidence as against the others was made by the charge ultimately dependent upon the finding of a conspiracy by the jury, and they were cautioned to use their own judgment.   Declarations of the several defendants properly were admitted as against themselves independent of this ruling and before it.   *Commonwealth* v. *Ingraham*, 7 Gray, 46, 47. *Commonwealth* v. *Hunton*, 168 Mass. 130, 132.   So far as they might be evidence against the others after a conspiracy was established *aliunde*, there was no necessary order of proof.   *Commonwealth* v. *Smith*, 163 Mass. 411, 418.   *Commonwealth* v. *Waterman*, 122 Mass. 43, 59.   *Regina* v. *Brittain*, 3 Cox C. C. 76, 77.   It was proper, too, to call for what was said by the defendants after as well as before the conspiracy had been carried out, and then, if irrelevant matters were mentioned in the answer without special objections, to order those matters not to be considered, as the judge would have done in this case but for the objection of the defendants.   He cautioned the jury that after the conspiracy had accomplished its end declarations were admissible only against the party making them.   The jury were cautioned in every proper way not to consider evidence admitted only as against one when they were dealing with the case of the others.   This was all that could be demanded.   *Commonwealth* v. *Ingraham*, 7 Gray, 46.   *Commonwealth* v. *Bingham*, 158 Mass. 169, 171.   It hardly needs saying that the assumption in a part of the defendants' argument that all evidence of declarations in conspiracy must be admissible against all is unfounded.

Evidence that fraudulent voters were spoken to by one of the

conspirators before all of them had come into the scheme was admissible in connection with the proof that the others did come in and by implication adopted the act. Also the usual way of proving a conspiracy is by showing a series of acts on the part of the several defendants all converging to one point.

The district attorney, when certain evidence was objected to, said : " It is the flight of Ryan I want to show." An exception was noted. But without more it is enough to say that the remark was not subject to exception. *O'Driscoll* v. *Lynn & Boston Railroad,* 180 Mass. 187. *Commonwealth* · v. *McConnell,* 162 Mass. 499, 503. *Commonwealth* v. *Pcisson,* 157 Mass. 510, 513.

All that was necessary to give was given of the request touching the ignorance of the grand jury of the names of the persons described in the indictment as unknown. See *Commonwealth* v. *Coy,* 157 Mass. 200, 215. The court properly left the weight of the testimony of fellow conspirators to the jury. *Commonwealth* v. *Wilson,* 152 Mass. 12, 14. *Commonwealth* v. *Bishop,* 165 Mass. 148, 150. It does not appear to us to need argument that there was sufficient evidence of the guilt of the defendant Rogers. The preliminary meetings were in his house, he was present, and agreed to contribute money toward the end, and he helped at the time of the caucus.

We have not neglected the consideration of any part of the defendants' argument, but we think the mention of other points and further discussion superfluous.

*Exceptions overruled.*

*P. J. Doherty & A. E. Burr,* for Rogers.

*F. W. Kittredge,* for Lord.

*J. F. Sweeney, F. B. Livingstone & G. A. Flynn,* for Winsloe.

*S. J. Elder, W. C. Wait & E. A. Whitman,* for Newmarch.

*M. J. Sughrue,* First Assistant District Attorney, for the Commonwealth.