COMMONWEALTH *vs.* MARIEA ADAMS.

Suffolk.     April 1, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Husband and Wife. Evidence,* Presumptions and burden of proof. *Practice, Criminal,* Exceptions.

The presumption that a crime committed by the act of a married woman in the presence of her husband is the crime of the husband and not of the wife is not conclusive, and evidence of the woman's conduct even in her husband's presence may be sufficient alone to rebut it.

No exception lies to a refusal to give a ruling although correct if the subject of the ruling was covered sufficiently by the instructions given, or if an instruction was given more favorable to the excepting party than that refused.

A defendant in a criminal trial has no more right than a party to a civil action to pick out a portion of the evidence and ask for a ruling upon it, and the refusal of a request for such a ruling is no ground for exception.

INDICTMENT FOR LARCENY in three counts found and returned on January 4, 1904, the first count charging the larceny of a finger ring, the property of Alanson Bigelow, the second count charging the larceny of a glass dish, the property of Jordan,

Marsh and Company, and the third count charging the larceny of several pieces of jewelry, the property of some person unknown.

In the Superior Court the defendant was tried before *Bond*, J. By agreement of parties, the judge directed a verdict of not guilty on the third count, and the jury returned a verdict of not guilty on the second count.

Upon the. first count the defendant among other requests asked for the following rulings:

"2. That if the jury find as to count one, that the property was stolen by the defendant, while in the presence of her husband, she is to be acquitted, for the reason that she is presumed by law to have acted under his coercion or control.

"3. There is no evidence to rebut the presumption of coercion as to count one.

"4. The evidence relied on by the Commonwealth to rebut the presumption of coercion must be proven beyond a reasonable doubt.

"5. The facts relied upon by the defendant to prove that the man with her was her husband, and to raise the presumption of coercion, need not be proved by her beyond a reasonable doubt, but may be proved by a fair preponderance of the evidence introduced either by herself or by the government.

"6. A woman is presumed to be under the coercion or control of her husband, and not guilty of the offence of larceny, if she, while in his presence, steals, or if he, while in her presence, steals, although she knows he is about to steal, remains silent while he steals, and does not disclose the larceny at the time of its committal or subsequently.

"7. There is no evidence that the defendant while in the Bigelow store said anything or did anything which can be found by the jury to be sufficient to rebut the presumption of coercion.

"8. If the jury find, beyond a reasonable doubt, that the defendant, after being taken by the clerk of Bigelow's store from the sidewalk, made any false statements as to who the man was who was with her, or any false statements as to the alleged stolen property, such false statements would not rebut the presumption of coercion if made by her solely for the purpose of shielding herself or her husband from the legal consequences of his guilty conduct."

"10. The defendant is presumed to be innocent.

"11. If the Commonwealth relies on circumstantial evidence to overcome the presumption of innocence, or the presumption of coercion, it must prove such a state of circumstances as will admit of no reasonable construction except that of guilt. If the circumstances can reasonably be construed in favor of her innocence, that construction must be adopted by the jury."

"21. If the jury find that the man with the defendant at Bigelow's store was her husband, the defendant must be acquitted."

The jury returned a verdict of guilty on the first count; and the defendant alleged exceptions.

*J. B. Moran*, for the defendant.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

LORING, J. The defendant was convicted on the first count of the indictment against her. In that count she was charged with the larceny of a ring. It appeared in evidence that on the 22d of December, shortly before five o'clock in the afternoon, when the store was crowded with shoppers for Christmas, a man and a woman (the woman being the prisoner whose exceptions are now before us) came into a jewelry store, walked to a show-case about forty feet from the door, and asked to see some signet rings. They had some discussion with the clerk as to which of the signet rings shown would "take" the initial she wished cut on it, and as to whether the cutting could be done by Christmas, and it was arranged that the initial should be brought in the next day. The man and woman were then invited by the clerk to go to the art room and see if there was anything there which they might like to buy. The clerk then busied himself in arranging a tray of rings for the next day's trade. He had two trays, each filled in part with rings for sale and in part with dummy rings put in when a ring was taken out on being sold. He had taken all the dummy rings out of one tray and filled it with diamond and ruby rings, when the man and woman appeared again; this was some twenty minutes after they left to go to the art room. The woman said she was interested in looking at pretty things, and asked if it would bother the clerk if she was allowed to look and ask questions. He answered that it

could do no harm if she looked in the case.   Thereupon she reached forward and lifted one of the trays of rings toward her, whereupon the clerk took hold of the tray.   The tray which was the one full of diamond and ruby rings lay on the show-case next the man and woman, with a tray containing some dummy rings behind it, and the clerk leaning over with his hands on the two trays.   At this time a customer known to the clerk came to the show-case and asked when he would be at liberty.   The clerk turning toward him said: "If you will wait a moment, I think I can be ready to wait on you."   To which the customer answered that he was too busy then and would come in in the morning, and asked at what time he should come.   The clerk said, "Half past eight promptly."   The clerk testified that at that very instant he realized that the man and woman were going away very rapidly toward the door; he looked down, saw that the ring in the corner of the tray was gone, shoved the trays into the show-case and ran after them.   The nearer they got to the door the faster they went.   The clerk caught up just as the man, who was ahead, reached the door and "jumped out into the street, and disappeared in the crowd."   The clerk took hold of the woman, who was then on the sidewalk.   She cried, "Let me go!"   He said "There is a ring missing, and we shall be obliged to detain you."   She ceased struggling and went back; said she knew nothing about the ring.   The clerk said: "Then the gentleman who was with you must," to which she replied that she knew nothing about the man; that she met him on the street; that he spoke to her and she to him, and "we went immediately to your store."   She said that she lived at Los Angeles; that she was "travelling around"; that she had a little money in the Los Angeles bank, enough property to take care of her; that she had no baggage except a grip, which was at the Lenox where she stopped the night before; and, in answer to a question, that she had no change of clothing coming on from Los Angeles and travelling about.   She was then taken into custody.   At the station house she repeated the same story, adding that she had a cousin somewhere in the city and was going "to look them up," but had not done so.   She had a hand bag with her in which was a dish.

The officer who took her into custody testified that she said

she was not married, that she was a widow. Another officer testified in addition that she said she did not know the name of the man who had escaped; that she met him about half an hour before they went to the store; that after they met they went to a restaurant and had two or three drinks, and from there they went to the store; that she said she did not know "at whose solicitation they went into this store." This officer also testified that on his telling her that he was going over to the Lenox, the defendant said "'You need not go to the Lenox; I do not want to send you on a fool's errand, as I only arrived here this morning,' or something to that effect." On some pictures being brought out by the chief inspector of police, she admitted that one of them was a picture of herself, and added, on being asked who she was: "Now you wait till the morning when I am brought over to the office; they will all know who I am; that will be time enough."

The prisoner did not testify but offered evidence that the man who was with her was her husband; that their home was in Detroit, and "that they left together a few weeks before the alleged larceny to go East." No other evidence was offered by her.

Ten out of twenty-one rulings requested by the prisoner were refused. She took exceptions to the failure to give these rulings, and "also to such instructions as the court did give inconsistent with any instructions asked for, and also as to that portion of the court's charge relating to the presumption of coercion and the rebuttal thereof."

The jury found the defendant guilty on this first count, and the case is here on these exceptions.

It is not necessary to go at length into the rule which raises a presumption that the wife is the innocent and the husband the guilty one when a crime is committed by a wife in her husband's presence. The rule and the reason for it are well stated in *Commonwealth* v. *Wood*, 97 Mass. 225. It also is settled in this Commonwealth that "when a married woman is indicted for a crime, and it is contended in defence that she ought to be acquitted because she acted under the coercion of her husband, the question of fact to be determined is whether she really and in truth acted under such coercion, or whether she acted of her own free will

and independently of any coercion or control by him. To aid in determining this question of fact, the law holds that there is a presumption of such coercion from his presence at the time of the commission of the crime; this presumption, however, is not conclusive, and it may be rebutted." *Commonwealth* v. *Daley*, 148 Mass. 11, 12. See also *Commonwealth* v. *Moore*, 162 Mass. 441. It follows that the judge was right in not giving the second, sixth and twenty-first rulings asked for.

On the evidence the jury may well have found that the larceny was the result of a preconcerted scheme to steal, in pursuance of which the prisoner had travelled from Detroit to Boston, to take advantage of the opportunities for theft in a jewelry store when crowded by shoppers just before Christmas; that the sole object in visiting this store and all that was done in it were in pursuance of this scheme; and from the falsity of the story told by her and the failure to give any honest account of herself when she tried to, the jury were warranted in believing that the scheme was a deliberate one. If the jury believed this they had a right to believe that she was a guilty party, jointly liable with the husband for the larceny, and not an innocent wife acting under her husband's coercion. The third request was rightly refused.

There was no occasion to instruct the jury as to whether what passed in the jewelry store was sufficient by itself to rebut the presumption of innocence from coercion. That was not the question. The question was whether what happened there, considered with the other evidence in the case, was sufficient to rebut and did in fact rebut this presumption.

The defendant has argued that the whole conduct of the woman in the store must be thrown out in considering whether the presumption is overcome because during all this time she was in the presence of her husband. It is true that the presumption applies to all her conduct, but as the presumption is not a conclusive one, her conduct, even in her husband's presence, may be such as alone and by itself to overcome the presumption. See in this connection *Commonwealth* v. *Moore*, 162 Mass. 441.

The jury were told: " Now, this case is like all others that you have had in this respect; the government is bound to prove beyond any reasonable doubt all the elements that are necessary to be proved in order to make out the guilt of the defendant upon

each of these counts — all that that involves.  The larceny of the
property and the liability of the defendant, if she is a married
woman and if with her husband at the time of the larceny, if there
was any, under the first count the government has to prove that
beyond a reasonable doubt.  It is for you to say whether the evi-
dence satisfies you beyond a reasonable doubt of the guilt of the
defendant under the rules of law as I have stated them to you,"
and the fact that the government had to prove its case and the
whole of it beyond a reasonable doubt was repeated several times.
This was correct.  No exception was taken to the charge except
on the part relating to coercion and except so far as it was incon-
sistent with the rulings asked for.  Although possibly the law
might have been stated as it is stated in the fourth, tenth and
eleventh rulings asked for, this instruction was sufficient, and
the exceptions to the failure to give these rulings must be
overruled.

No instruction was given to the jury as to what proof of her
marriage had to be made on the part of the prisoner to raise the
presumption.  It was correct to instruct the jury that the burden
was on the government to prove beyond a reasonable doubt " the
liability of the defendant, if she is a married woman and if with
her husband at the time of the larceny, if there was any."  The
instruction given was more favorable to the prisoner than the
fifth ruling asked for by her.

The defendant has no right to pick out a part of the evidence
and ask a ruling upon it.  *Commonwealth* v. *Gavin*, 148 Mass.
449.  *Lufkin* v. *Lufkin*, 182 Mass. 476.  The law upon the
matter covered by the eighth ruling was correctly stated, and
the exception to the failure to give it must be overruled.

*Exceptions overruled.*