COMMONWEALTH *vs.* STEFAN BORASKY & another.

Hampden.˙ March 24, 1913. — April 1, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Practice, Criminal,* Joint trial in capital case, Challenge of juror, Question by juror, New trial. *Jury and Jurors. Evidence,* Best and secondary, Of identity of instrument in writing, Against one of two defendants in criminal case, Opinion. *Homicide. Witness,* Impeachment.

The rule, that the granting of a motion for a separate trial made by one of two defendants indicted jointly is within the discretion of the presiding judge, applies to such a motion made by one of two defendants jointly indicted for murder, where it is known that a confession in writing made by the other defendant is to be offered in evidence at the trial.

It is not a rightful cause for the challenge of a juror by the defendant in a trial for murder, that the juror in answer to a question by the presiding judge stated

that he was prejudiced in favor of capital punishment, if in answer to further questions the juror stated that he would favor conviction only if guilt was established on the evidence beyond a reasonable doubt.

At the trial of an indictment for murder a medical examiner, who performed an autopsy upon the body of the deceased, of which he filed an official report under the requirement of R. L. c. 24, §§ 9, 10, as amended by St. 1909, c. 273, § 1, properly can testify to the conditions that he observed at the autopsy, against an objection of the defendant on the ground that the official report is the best evidence.

At the trial of an indictment for murder, upon the issue of the identity of a check, which the Commonwealth contended was taken from the body of the murdered person and was procured to be cashed by one of the defendants, a daughter-in-law of the deceased, who can neither read nor write and who has testified that she recognizes a check shown her as the one in question from a picture of vegetables upon it, properly may be allowed to testify, that from time to time she has seen other checks like the one thus identified by her.

At the trial of two defendants indicted jointly for murder, an instruction by the presiding judge, not to consider in any way against one of the defendants certain evidence which is admissible against the other defendant, sufficiently protects the defendant as to whom the jury has been told to disregard the evidence.

At the trial of two defendants indicted jointly for the murder of a woman, the son of the woman properly may be allowed to testify that both defendants, after having been in his house and having seen his mother, attracted his attention by the way in which they looked at him and that later they laughed at him as he was working in his barn; and, where there are circumstances about the presence of both defendants which can be found to indicate some design, evidence of the conduct and bearing of the defendants within two days before and at or near the place of the commission of the crime, if not admissible as of right, is at least admissible within the discretion of the presiding judge.

At the trial of two defendants on an indictment for the murder of a certain person, evidence that on the evening of the day that the person was killed both defendants came into a liquor store and "appeared to be excited" is competent to show the conduct and appearance of the defendants after the crime was committed as bearing upon their guilt.

At the trial of two defendants, named B and K, jointly indicted for the murder of a woman, there was evidence that on the evening of the day when the crime was committed the defendants, who were Poles, went together to a liquor store, where B told K that the clerk spoke the Polish language and then went out on the sidewalk while K indorsed and got cashed a check that had been on the person of the murdered woman, that B then returned to the store and told K to hurry up and they departed together. There was other evidence tending to show a common design in their association on that day and on the few days previous to the murder. *Held*, that the evidence was competent, and that there was sufficient evidence for the jury to consider whether the cashing of the check was with the knowledge and approval of B and for the joint benefit of both defendants.

At the trial of two defendants jointly indicted for the murder of a woman, where there was evidence that the defendants on the evening of the day of the murder cashed for their joint benefit a check that was on the person of the murdered woman, evidence that a day or two after the murder a witness came suddenly

upon one of the defendants who was counting money and that he acted "kind o' sneaky about it " is competent, it being a description of conduct and not the mere statement of an inference or conclusion.

Where the defendant in a trial for murder has testified in his own behalf, and a court record has been introduced in evidence without objection showing a conviction of a certain person of a different name from that of the defendant, the defendant can be asked on his cross-examination whether he was not the person named in such record, who was convicted of an assault with a dangerous weapon on a certain date and was committed to the house of correction, if this description fairly calls the attention of the witness to the record in evidence, exact precision in the description of the record not being necessary in the framing of the question, and the record itself, if shown to relate to the defendant, being admissible to impeach his credibility as a witness.

In a criminal case, as in a civil one, when the jury have returned to the court room after their deliberations have begun, the orderly conduct of the trial requires that a question from a juror to the presiding judge commonly should be presented through the foreman, who is the mouthpiece of the jury, this being a matter which must be left largely to the discretion of the presiding judge. In the present case, upon an exception to the denial of a motion for a new trial, no question in regard to the propriety of the action of the judge could be raised, because no objection had been made at the trial to the suggestion of the judge to a juror who had expressed a desire to ask a question, that he "had better communicate through the foreman in writing."

In capital and other criminal cases, as in civil cases, the granting of a new trial on the ground of newly discovered evidence is a matter of judicial discretion.

Two defendants were indicted jointly for murder. They were tried together and both were convicted. After the trial, one of the defendants died and an autopsy was performed on his body. The surviving defendant filed a motion for a new trial on the ground of newly discovered evidence, consisting of the facts disclosed by the autopsy. The deceased defendant had testified as a witness at the trial and his testimony had tended to show the guilt of the surviving defendant. The motion for a new trial alleged that the autopsy showed such a diseased condition of the brain of the deceased defendant as to render his testimony given at the trial unworthy of belief. The motion was supported by an affidavit of physicians, who had taken part in the autopsy, to the effect that the brain of the deceased defendant was diseased and had been so for many years and that at the end there had been a fatal disintegration of brain substance. The affidavit concluded as follows: "Evidence of the final organic process which terminated life made itself clearly manifest on the day that the jury returned its verdict. Whether the process developed acutely or had been coming on for some time we are unable to say. Such a brain disease means a modified mentality. Statements made by the said [deceased defendant] at any time might be reliable or unreliable." The motion was denied by the presiding judge. *Held*, that the matters to be passed upon were for the consideration of the presiding judge, who saw and heard the deceased defendant as a witness, and that the result of the exercise of his discretion in denying the motion for a new trial could not be disturbed.

RUGG, C. J.   The indictment charged the defendant and one Antone Kolek with having committed the crime of murder by

killing Rose Amansky. Both were convicted, but Kolek has deceased since the trial. It does not appear to have been disputed at the trial that the woman was murdered.

1. Borasky seasonably filed a motion that he should have a separate trial on the grounds that there would probably be introduced in evidence a written confession made by Kolek, which implicated both defendants, and that, as he had been unable to obtain a copy, the court should order the Commonwealth to furnish a copy, in order that it might be annexed to his motion. At the argument in support of the motion the presiding judge* was requested to examine the confession in the presence of the district attorney and in the absence of the defendant Borasky or his counsel. There was no error in the denial of the motion. Whether two defendants indicted jointly shall be tried together is discretionary with the trial court. This has been decided many times respecting the trial of crimes involving a punishment less than capital. *Commonwealth* v. *Robinson,* 1 Gray, 555, 560. *Commonwealth* v. *Thompson,* 108 Mass. 461. *Commonwealth* v. *Miller,* 150 Mass. 69. *Commonwealth* v. *Bingham,* 158 Mass. 169. *Commonwealth* v. *Bishop,* 165 Mass. 148. *Commonwealth* v. *Seeley,* 167 Mass. 163. In *Commonwealth* v. *James,* 99 Mass. 438, it was stated, in the course of a trial for murder heard by the full court sitting *in banc* for the trial of two defendants jointly indicted for murder, that "The general rule is, that persons jointly indicted should be tried together." The confession was there regarded as presenting "an exceptional case" and it was intimated that a separate trial would be granted if the Commonwealth intended to offer the confession. It was not offered and was withdrawn by the Commonwealth, and a joint trial was had. It does not appear that the intimation there was thrown out in any other way than as the exercise of discretion. That such a motion is not to be granted as of right but rests in the sound judicial discretion of the trial court, even in capital cases, is the rule in the federal courts. *United States* v. *Marchant,* 12 Wheat. 480. *United States* v. *Ball,* 163 U. S. 662, 672. There is nothing in the case at bar to indicate any abuse of discretion. Plainly, the presiding judge was not required to examine the alleged confession in the presence of the

---

* *King,* J.

district attorney and in the absence of counsel for the defendant. During the trial the judge was scrupulous to advise the jury, whenever any statements made by Kolek in the absence of Borasky implicating the latter were offered in evidence, that they were not to be considered against Borasky.

2. William E. Stibbs, called as a juror, stated in reply to one of the usual questions put by the presiding judge that he was prejudiced in favor of capital punishment. Further questions by the judge developed that the juror would favor conviction only if guilt was established on the evidence beyond a reasonable doubt. At the conclusion of the examination the judge said, "I don't see as your prejudice amounts to anything." This fairly summarizes the result of the answers of the juror. He then was sworn. After the panel was completed and all the jurors sworn, the counsel for the defendants asked that the juror Stibbs be challenged for cause, for the reason that they had not understood his answer that he was in favor of capital punishment. The ancient and common statement in court touching the right of challenge is that it must be exercised before the juror is sworn. See *Commonwealth* v. *White*, 208 Mass. 202, 208. But without placing the decision on that ground, it is plain that the juror was indifferent in law, that he had no knowledge from any source as to the case, and that his answer only meant a firm belief in capital punishment in cases in which it is provided by law. This is far from disqualification in a juror. *Commonwealth* v. *Abbott*, 13 Met. 120.

3. An autopsy was performed by the medical examiner of which a record was made. R. L. c. 24, §§ 9, 10, as amended by St. 1909, c. 273, § 1. The defendant, Borasky, objected to the testimony of the physician, who performed the autopsy, as to his observations, on the ground that the record was the best evidence. This objection was overruled properly. The testimony of the witness who was present and observed the condition revealed by the autopsy was admissible. *Commonwealth* v. *Dunan*, 128 Mass. 422.

4. There was testimony tending to show that a check taken from the body of the murdered woman was procured to be cashed by one of the defendants. Her daughter-in-law, Minnie Amansky, who could neither read nor write, testified that she recognized a check shown her as the one in question from the picture of vegetables on it. Against the objection and exception of the defend-

ant Borasky, she was permitted to testify that she had seen other checks from time to time like the one she had identified on the witness stand. This was not error. The testimony of an illiterate person as to the identity of a written instrument is not incompetent. *Commonwealth* v. *Meserve,* 154 Mass. 64. Its value may depend upon the degree of familiarity of the witness with instruments like in kind and evidence tending to show such familiarity has probative force.

5. The defendant Kolek, on the cross-examination of Minnie Amansky, asked if in the police court, referring to a day or two before the murder, in reply to the question, "You found Stefan sleeping in the lot?" she did not testify, "Yes, my mother-in-law says to me, 'You know Stefan has come.'" The witness answered in the affirmative. He then asked her, apparently in an effort to show some statement contrary to her earlier testimony, whether her mother-in-law did say two days before her death, "Do you know that Stefan has come?" The judge admitted the question, so far as it related to Kolek, but directed the jury to disregard it utterly, so far as Borasky was concerned. This was not error. There appears to have been no controversy that Borasky was a guest at the Amansky house on that day and night, and it is difficult to see how in any event he could have been injured by the testimony. But it was distinctly limited in its effect by the ruling of the judge that it was not evidence against him. The same admonition by the judge was given respecting testimony of Godel Amansky * to the effect that the defendant Kolek had told him two days before the murder that the defendant Borasky was in the field. The jury was cautioned, whenever occasion arose, not to consider in any way against Borasky evidence competent against Kolek alone. This protected the rights of the present defendant. *Commonwealth* v. *Rogers,* 181 Mass. 184, 193. *Commonwealth* v. *Bishop,* 165 Mass. 148, 151.

6. The testimony of Godel Amansky was competent, that both defendants, after having been in his house and having seen the woman who was subsequently murdered, attracted his attention by the way in which they looked at him, and that later they laughed

---

* Godel Amansky was the son of the murdered woman and was the husband of Minnie Amansky.

at him as he was working in his barn.  The conduct, actions and bearing of the defendants, within two days before and at or near the place of the commission of the crime with which they were charged, was admissible.  It was, at least, within the discretion of the trial judge.  There were circumstances about the presence of both defendants at the Amansky place which might have been found to indicate some design.

7.  A witness, who was a clerk in a liquor store, was permitted, against the exception of the defendant Borasky, to testify that on the evening of the day when Rose Amansky met her death both defendants came into the store and " appeared to be excited."  The conduct and appearance of the defendants, after the crime had been committed, was competent as bearing upon their guilt.  *Commonwealth* v. *Piper*, 120 Mass. 185, 189.  *Commonwealth* v. *Trefethen*, 157 Mass. 180, 198.

8.  A check payable to the order of G. Amansky was on the person of the murdered woman.  There was testimony that the two defendants on the evening of the day the crime was committed went together to a liquor store and Borasky told Kolek that the clerk spoke the Polish language, and the former then went out on the sidewalk while the latter indorsed this check and got it cashed, and Borasky returned to the store and told his companion to hurry up, and they departed together.  This testimony was competent. There was a considerable body of evidence to show a common design in their association of that day and the few days previous. *Commonwealth* v. *Smith*, 151 Mass. 491, 495.  *Commonwealth* v. *Kelly*, 186 Mass. 403.

9.  The ruling of the judge that there was sufficient evidence for the jury to consider whether the cashing of the check was with the knowledge and approval of Borasky and for the joint benefit of both defendants was proper.  *Commonwealth* v. *Rogers*, 181 Mass. 184, 193.

10.  The testimony of the witness Dickinson that coming suddenly upon Borasky, while counting money a day or two after the day of the murder, he acted "kind o' sneaky about it " was also competent.  It was responsive to the question.  It was not the statement of an inference or conclusion, but rather a description of conduct.  *Gorham* v. *Moor*, 197 Mass. 522.  As such it had probative force.

11. A witness testified to a narration, made by Kolek at the time of his arrest, of his connection with the killing which was in the nature of an admission or confession. His statement was in effect that whatever part he took was under the compulsion of the defendant Borasky. Treating the defendant's exception to the admission of this evidence as seasonably taken, it must be overruled. The judge carefully cautioned and instructed the jury that it was to be considered against Kolek alone, and not in the slightest degree against Borasky. This protected his rights. The reasons have been discussed fully under the first part of this opinion.

12. A court record showing the conviction of one Michael Croski was introduced in evidence without objection. The defendant Borasky, who testified in his own behalf, was asked by counsel for Kolek if he was "the Michael Croski ... who was convicted for assault with a dangerous weapon on October 12, 1908, and committed to York Street to the House of Correction." The record showed the conviction and a fine of $30, and commitment to the House of Correction. The question was objected to on the ground that it did not embrace the words stated in the complaint and sentence. This was not an attempt to prove conviction without the record, but merely identification of the witness with the one named in the record already in evidence. Exact precision was not required in such a question. It was enough if the description fairly called the attention of the witness to the record. Plainly it did. *Commonwealth* v. *Sullivan*, 150 Mass. 315. The record was admissible in evidence as affecting the credibility of Borasky as a witness.

13. The defendant's request for instructions * was refused rightly. There was ample evidence (which it is not necessary to narrate) of deliberately premeditated malice aforethought on the part of the defendant Borasky apart from the testimony of Tar-

---

* The instruction requested was as follows: "That, if the jury should find that the only evidence of premeditated malice aforethought by the said Stefan Borasky against said Rose Amansky is the evidence of Peter Tarvinsky, who said he had had trouble with the said Stefan Borasky and tried to have a warrant issued for his arrest, then the jury have a right to find that the said Peter Tarvinsky was biased and prejudiced against the said Stefan Borasky and that premeditated malice aforethought is not sufficiently proved and shown."

vinsky. The defendant could not single out one piece of evidence bearing upon the subject, and as matter of right ask an instruction on it. *Commonwealth* v. *Adams,* 186 Mass. 101. The judge gave full and accurate instructions as to the bias of the witness and the effect it might have upon his testimony if found to exist. The rights of the defendant Borasky were protected fully in this regard.

14. The defendant Borasky filed a motion for a new trial directly after the return of the verdict. One ground related to an incident which occurred when the jury had returned to the court room after the charge for the purpose of having portions of the evidence read to them. At the conclusion of this reading, one juror said, "I would like to ask you a question." To this the judge replied, "You had better communicate through the foreman in writing, and if you find you need it, send it down and I will ask you to come down again. . . Don't hesitate, . . . I don't mean, gentlemen, to check your questions, not a particle." No objection, request, or suggestion was made to the judge touching this at the time. This was the time for making objection, and no right of the defendant was invaded if he failed to act then. *Commonwealth* v. *Morrison,* 134 Mass. 189. *Loveland* v. *Rand,* 200 Mass. 142. But treating the question on its merits, it was not ground for a new trial, and the conduct of the judge is not open to criticism. It was correct practice. The foreman is the mouthpiece of the jury. *Burke* v. *Hodge,* 211 Mass. 156, 161. The orderly conduct of trials requires that questions commonly should be presented through the foreman, and not by each juror according to his own inclination. Very much must be left to the discretion of the presiding judge. As was said by Chief Justice Shaw, in *Kellogg* v. *French,* 15 Gray, 354, 357: "The situation is a delicate one. The jurors are presumed to have discussed the case, and to have formed or be on the point of forming opinions. Any further discussion, either of the evidence or the law, in presence of the jury, might be eminently prejudicial."

15. The defendant Borasky filed a second motion for a new trial based upon newly discovered evidence. The substance of this motion was that Kolek, the other defendant, had died since the trial and an autopsy performed on his body showed such a diseased condition of his brain as rendered his testimony given at the trial

unworthy of belief. There was a further allegation that the evidence of other witnesses was not sufficient to warrant a verdict against him. This motion was supported by an affidavit signed by four physicians, to the effect that they had taken part in an autopsy on the body of Kolek, and that his brain was diseased, and had been for many years, and at the end there was a fatal disintegration of brain substance, and concluded in these words: "Evidence of the final organic process which terminated life made itself clearly manifest on the day that the jury returned its verdict. Whether the process developed acutely or had been coming on for some time we are unable to say. Such a brain disease means a modified mentality. Statements made by the said Kolek at any time might be reliable or unreliable." The granting of a new trial on the ground of newly discovered evidence rests on sound judicial discretion, both in criminal and civil cases. *Commonwealth* v. *Green*, 17 Mass. 515, 535. *Commonwealth* v. *Ruisseau*, 140 Mass. 363. *Powers* v. *Bergman*, 210 Mass. 346. There is nothing to show that such discretion was not exercised wisely in the present case. The affidavit of the physicians went no further than to show that facts revealed by the post mortem examination of Kolek might or might not have affected his testimony. There is nothing in the record to indicate the experience of the affiants in that branch of medicine, nor how far they were capable of determining the mental condition of the deceased at the time he gave his testimony. Attaching full weight to the supporting affidavit, it cannot be said to throw greater probability on one side than on the other. The judge who passed upon the motion saw the witness upon the stand, and had full opportunity to observe whether he showed any symptoms of unreliability in giving his testimony. His manner and appearance together with what he said and all the other circumstances were for the consideration of the judge in reaching a conclusion.

*Exceptions overruled.*

*J. F. Carmody*, for the defendant Borasky.

*C. T. Callahan*, District Attorney, for the Commonwealth.